## IN THE MATTER OF LAURENCE S. FORDHAM.

Suffolk. April 2, 1996. - August 9, 1996.

Present: LIACOS, C.J., O'CONNOR, GREANEY, & FRIED, JJ.

*Board of Bar Overseers. Supreme Judicial Court,* Practice of law. *Attorney at Law,* Disciplinary proceeding, Compensation, Public censure, Canons of ethics.

Where the Supreme Judicial Court has responsibility to review attorney discipline matters, bar counsel necessarily has a right to appeal to the court from the Board of Bar Overseer's dismissal of a petition for discipline and the court has jurisdiction to decide the matter. [484-485]

The Board of Bar Overseers erred in dismissing bar counsel's petition for discipline against an attorney for charging a clearly excessive fee in violation of S.J.C. Rule 3:07, DR 2-106, where the evidence before the hearing committee demonstrated that the attorney and his associates devoted substantially more hours than a prudent experienced lawyer would have to the defense of a charge of operating a motor vehicle while under the influence of intoxicating liquor and related charges and that the fee charged, $50,000, was much higher than the fee customarily charged for such a bench trial. [487, 489-491]

The Board of Bar Overseers erred in concluding that an attorney's fee was not clearly excessive because the client entered into the fee agreement "with open eyes" where the hearing committee had found that the client did not appear to have understood the implications of entering the agreement; the board also erred in adopting the hearing committee's finding that the client acquiesced in the fee where the standard under S.J.C. Rule 3:07, DR 2-106 (A), is whether the fee "charged" is excessive. [491-493]

That the Supreme Judicial Court has not previously disciplined an attorney for charging a clearly excessive fee in violation of S.J.C. Rule 3:07, DR 2-106, did not warrant a conclusion that due process would be offended in the first instance of such discipline. [493-494]

The appropriate sanction for any attorney's charging a clearly excessive fee in violation of S.J.C. Rule 3:07, DR 2-106, is a public censure. [494-495]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on April 7, 1995.

A motion to dismiss was heard by *Lynch*, J., and the case was reported by him.

*Arnold R. Rosenfeld*, Bar Counsel.

*Laurence M. Johnson* for the respondent.

O'CONNOR, J. This is an appeal from the Board of Bar Overseers' (board's) dismissal of a petition for discipline filed by bar counsel against attorney Laurence S. Fordham. On March 11, 1992, bar counsel served Fordham with a petition for discipline alleging that Fordham had charged a clearly excessive fee in violation of S.J.C. Rule 3:07, DR 2-106, as appearing in 382 Mass. 772 (1981), for defending Timothy Clark (Timothy) in the District Court against a charge that he operated a motor vehicle while under the influence of intoxicating liquor (OUI) and against other related charges. Fordham moved that the board dismiss the petition and the board chair recommended that that be done. Bar counsel appealed from the chair's decision to the full board, and the board referred the matter to a hearing committee.

After five days of hearings, and with "serious reservations," the hearing committee concluded that Fordham's fee was not substantially in excess of a reasonable fee and that, therefore, the committee recommended against bar discipline. Bar counsel appealed from that determination to the board. By a vote of six to five, with one abstention, the board accepted the recommendation of the hearing committee and dismissed the petition for discipline. Bar counsel then filed in the Supreme Judicial Court for Suffolk County (county court) a claim of appeal from the board's action.

Fordham moved in the county court for a dismissal of bar counsel's appeal. A single justice denied Fordham's motion and reported the case to the full court. We conclude that the single justice correctly denied Fordham's motion to dismiss bar counsel's appeal. We conclude, also, that the board erred in dismissing bar counsel's petition for discipline. We direct a judgment ordering public censure be entered in the county court.

We summarize the hearing committee's findings. On March 4, 1989, the Acton police department arrested Timothy, then twenty-one years old, and charged him with OUI, operating a motor vehicle after suspension, speeding, and operating an unregistered motor vehicle. At the time of the arrest, the police discovered a partially full quart of vodka in the vehicle. After failing a field sobriety test, Timothy was taken to the Acton police station where he submitted to two breathalyzer tests which registered .10 and .12 respectively.

Subsequent to Timothy's arraignment, he and his father, Laurence Clark (Clark) consulted with three lawyers, who offered to represent Timothy for fees between $3,000 and $10,000. Shortly after the arrest, Clark went to Fordham's home to service an alarm system which he had installed several years before. While there, Clark discussed Timothy's arrest with Fordham's wife who invited Clark to discuss the case with Fordham. Fordham then met with Clark and Timothy.

At this meeting, Timothy described the incidents leading to his arrest and the charges against him. Fordham, whom the hearing committee described as a "very experienced senior trial attorney with impressive credentials," told Clark and Timothy that he had never represented a client in a driving while under the influence case or in any criminal matter, and he had never tried a case in the District Court. The hearing committee found that "Fordham explained that although he lacked experience in this area, he was a knowledgeable and hard-working attorney and that he believed he could competently represent Timothy. Fordham described himself as 'efficient and economic in the use of [his] time.'. . .

"Towards the end of the meeting, Fordham told the Clarks that he worked on [a] time charge basis and that he billed monthly. . . . In other words, Fordham would calculate the amount of hours he and others in the firm worked on a matter each month and multiply it by the respective hourly rates. He also told the Clarks that he would engage others in his firm to prepare the case. Clark had indicated that he would pay Timothy's legal fees." After the meeting, Clark hired Fordham to represent Timothy.

According to the hearing committee's findings, Fordham filed four pretrial motions on Timothy's behalf, two of which were allowed. One motion, entitled "Motion in Limine to Suppress Results of Breathalyzer Tests," was based on the theory that, although two breathalyzer tests were exactly .02 apart, they were not "within" .02 of one another as the regulations require. See 501 Code Mass. Regs. § 2.56 (2) (1994). The hearing committee characterized the motion and its rationale as "a creative, if not novel, approach to suppression of breathalyzer results." Although the original trial date was June 20, 1989, the trial, which was before a judge without jury, was held on October 10 and October 19, 1989. The

judge found Timothy not guilty of driving while under the influence.

Fordham sent the following bills to Clark:

"1.  April 19, 1989, $3,250 for services rendered in March, 1989.

"2.  May 15, 1989, $9,850 for services rendered in April, 1989.

"3.  June 19, 1989, $3,950 for services rendered in May, 1989.

"4.  July 13, 1989, $13,300 for services rendered in June, 1989.

"5.  October 13, 1989, $35,022.25 revised bill for services rendered from March 19 to June 30, 1989.

"6.  November 7, 1989, $15,000 for services rendered from July 1, 1989 to October 19, 1989."

The bills totaled $50,022.25, reflecting 227 hours of billed time, 153 hours of which were expended by Fordham and seventy-four of which were his associates' time. Clark did not pay the first two bills when they became due and expressed to Fordham his concern about their amount. Clark paid Fordham $10,000 on June 20, 1989. At that time, Fordham assured Clark that most of the work had been completed "other than taking [the case] to trial." Clark did not make any subsequent payments. Fordham requested Clark to sign a promissory note evidencing his debt to Fordham and, on October 7, 1989, Clark did so. In the October 13, 1989, bill, Fordham added a charge of $5,000 as a "retroactive increase" in fees. On November 7, 1989, after the case was completed, Fordham sent Clark a bill for $15,000.

Bar counsel and Fordham have stipulated that all the work billed by Fordham was actually done and that Fordham and his associates spent the time they claim to have spent. They also have stipulated that Fordham acted conscientiously, diligently, and in good faith in representing Timothy and in his billing in this case.

We consider first Fordham's contentions that bar counsel has no right to appeal from the board's decision to dismiss a petition for bar discipline and that the court lacked jurisdiction to entertain the appeal. Supreme Judicial Court Rule

4:01, § 1 (1), as amended, 368 Mass. 900 (1976), provides: "Any attorney admitted to, or engaging in, the practice of law in this Commonwealth shall be subject to [the Supreme Judicial Court's] exclusive disciplinary jurisdiction and the provisions of these rules . . . ." This court's right of exclusive jurisdiction over attorney disciplinary matters necessarily includes jurisdiction to review decisions of the board not to recommend discipline. If, as in the present case, there is an assertion that the board, in deciding to dismiss a petition for discipline, has misinterpreted or misapplied the disciplinary rules, which were promulgated by the court, there can be no legitimate doubt that the court has jurisdiction to review the board's interpretation and application of those rules. Furthermore, nothing in our rules or in reason suggests that the exercise of our disciplinary powers may not be invoked by bar counsel by appealing from a decision of the board to dismiss a petition for discipline. Indeed, who, other than bar counsel, who is independent of the board and is a party to all disciplinary proceedings, S.J.C. Rule 4.01, § 7 (3), 365 Mass. 696 (1974) and § 8 (3), as amended, 415 Mass. 1304 (1993), would be entitled to challenge the board's dismissal of a petition for discipline? A complainant does not have standing to do so. *Callahan* v. *Board of Bar Overseers*, 417 Mass. 516, 518 (1994). We conclude that, because this court has responsibility to review matters involving attorney discipline, bar counsel necessarily has a right to appeal to the court from the board's dismissal of petitions therefor and the court has jurisdiction to decide the matter.

The board dismissed bar counsel's petition for discipline against Fordham because it determined, relying in large part on the findings and recommendations of the hearing committee, that Fordham's fee was not clearly excessive. Pursuant to S.J.C. Rule 3:07, DR 2-106 (B), "a fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee." The rule proceeds to list eight factors to be considered in ascertaining the reasonableness of the fee:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

In concluding that Fordham did not charge a clearly excessive fee, the board adopted, with limited exception, the hearing committee's report. The board's and the hearing committee's reasons for dismissing the petition are as follows: Bar counsel and Fordham stipulated that Fordham acted conscientiously, diligently, and in good faith in his representation of the client and his billing on the case. Although Fordham lacked experience in criminal law, he is a "seasoned and well-respected civil lawyer." The more than 200 hours spent preparing the OUI case were necessary, "in part to educate [Fordham] in the relevant substantive law and court procedures," because he had never tried an OUI case or appeared in the District Court. The board noted that "[a]lthough none of the experts who testified at the disciplinary hearing had ever heard of a fee in excess of $15,000 for a first-offense OUI case, the hearing committee found that [Clark] had entered into the transaction with open eyes after interviewing other lawyers with more experience in such matters." The board also thought significant that Clark "later acquiesced, despite mild expressions of concern, in [Fordham's] billing practices." Moreover, the Clarks specifically instructed Fordham that they would not consider a guilty plea by Timothy. Rather they were interested only in

pursuing the case to trial. Finally, Timothy obtained the result he sought: an acquittal.

Bar counsel contends that the board's decision to dismiss the petition for discipline is erroneous on three grounds: First, "[t]he hearing committee and the Board committed error by analyzing only three of the factors set out in DR 2-106 (B) (1) - (8), and their findings with regard to these criteria do not support their conclusion that the fee in this case was not clearly excessive"; second, the board "misinterpreted [DR 2-106's] prohibition against charging a clearly excessive fee by reading into the rule a 'safe harbor' provision"; and third, "by allowing client acquiescence as a complete defense."

In reviewing the hearing committee's and the board's analysis of the various factors, as appearing in DR 2-106 (B), which are to be considered for a determination as to whether a fee is clearly excessive, we are mindful that, although not binding on this court, the findings and recommendations of the board are entitled to great weight. *Matter of Hiss*, 368 Mass. 447, 461 (1975). We are empowered, however, to review the board's findings and reach our own conclusion. *Matter of Anderson*, 416 Mass. 521, 525 (1993). In the instant case we are persuaded that the hearing committee's and the board's determinations that a clearly excessive fee was not charged are not warranted.

The first factor listed in DR 2-106 (B) requires examining "[t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." Although the hearing committee determined that Fordham "spent a large number of hours on [the] matter, in essence learning from scratch what others . . . already know," it "[did] not credit Bar Counsel's argument that Fordham violated DR 2-106 by spending too many hours." The hearing committee reasoned that even if the number of hours Fordham "spent [were] wholly out of proportion" to the number of hours that a lawyer with experience in the trying of OUI cases would require, the committee was not required to conclude that the fee based on time spent was "clearly excessive." It was enough, the hearing committee concluded, that Clark instructed Fordham to pursue the case to trial, Fordham did so zealously and, as stipulated, Fordham spent the hours he billed in good faith and diligence. We disagree.

Four witnesses testified before the hearing committee as experts on OUI cases. One of the experts, testifying on behalf of bar counsel, opined that "the amount of time spent in this case is clearly excessive." He testified that there were no unusual circumstances in the OUI charge against Timothy and that it was a "standard operating under the influence case." The witness did agree that Fordham's argument for suppression of the breathalyzer test results, which was successful, was novel and would have justified additional time and labor. He also acknowledged that the acquittal was a good result; even with the suppression of the breathalyzer tests, he testified, the chances of an acquittal would have been "[n]ot likely at a bench trial." The witness estimated that it would have been necessary, for thorough preparation of the case including the novel breathalyzer suppression argument, to have billed twenty to thirty hours for preparation, not including trial time.

A second expert, testifying on behalf of bar counsel, expressed his belief that the issues presented in this case were not particularly difficult, nor novel, and that "[t]he degree of skill required to defend a case such as this . . . was not that high." He did recognize, however, that the theory that Fordham utilized to suppress the breathalyzer tests was impressive and one of which he had previously never heard. Nonetheless, the witness concluded that "clearly there is no way that [he] could justify these kind of hours to do this kind of work." He estimated that an OUI case involving these types of issues would require sixteen hours of trial preparation and approximately fifteen hours of trial time. He testified that he had once spent ninety hours in connection with an OUI charge against a client that had resulted in a plea. The witness explained, however, that that case had involved a second offense OUI and that it was a case of first impression, in 1987, concerning new breathalyzer equipment and comparative breathalyzer tests.

An expert called by Fordham testified that the facts of Timothy's case presented a challenge and that without the suppression of the breathalyzer test results it would have been "an almost impossible situation in terms of prevailing on the trier of fact." He further stated that, based on the particulars in Timothy's case, he believed that Fordham's hours were not excessive and, in fact, he, the witness, would have spent a

comparable amount of time. The witness later admitted, however, that within the past five years, the OUI cases which he had brought to trial required no more than a total of forty billed hours, which encompassed all preparation and court appearances. He explained that, although he had not charged more than forty hours to prepare an OUI case, in comparison to Fordham's more than 200 expended hours, Fordham nonetheless had spent a reasonable number of hours on the case in light of the continuance and the subsequent need to reprepare, as well as the "very ingenious" breathalyzer suppression argument, and the Clarks' insistence on trial. In addition, the witness testified that, although the field sobriety test, breathalyzer tests, and the presence of a half-empty liquor bottle in the car placed Fordham at a serious disadvantage in being able to prevail on the OUI charge, those circumstances were not unusual and in fact agreed that they were "[n]ormal circumstances."

The fourth expert witness, called by Fordham, testified that she believed the case was "extremely tough" and that the breathalyzer suppression theory was novel. She testified that, although the time and labor consumed on the case was more than usual in defending an OUI charge, the hours were not excessive. They were not excessive, she explained, because the case was particularly difficult due to the "stakes [and] the evidence." She conceded, however, that legal issues in defending OUI charges are "pretty standard" and that the issues presented in this case were not unusual. Furthermore, the witness testified that challenging the breathalyzer test due to the .02 discrepancy was not unusual, but the theory on which Fordham proceeded was novel. Finally, she stated that she thought she may have known of one person who might have spent close to one hundred hours on a difficult OUI case; she was not sure; but she had never heard of a fee in excess of $10,000 for a bench trial.

In considering whether a fee is "clearly excessive" within the meaning of S.J.C. Rule 3:07, DR 2-106 (B), the first factor to be considered pursuant to that rule is "the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly." DR 2-106 (B) (1). That standard is similar to the familiar standard of reasonableness traditionally applied in civil fee disputes. See *Society of Jesus of New England* v. *Boston Landmarks Comm'n*, 411 Mass.

754, 759 n.10 (1992) (reasonable hours, when calculating fees pursuant to 42 U.S.C. § 1988 [1994], requires consideration as to "whether that time was reasonable in light of the difficulty of the case and the results achieved"). See also Restatement (Third) of the Law Governing Lawyers § 46 comment f (Proposed Final Draft 1996) ("The standards that apply when fees are challenged as unreasonable in fee disputes are also relevant in the discipline of lawyers for charging unreasonably high fees"). Based on the testimony of the four experts, the number of hours devoted to Timothy's OUI case by Fordham and his associates was substantially in excess of the hours that a prudent experienced lawyer would have spent. According to the evidence, the number of hours spent was several times the amount of time any of the witnesses had ever spent on a similar case. We are not unmindful of the novel and successful motion to suppress the breathalyzer test results, but that effort cannot justify a $50,000 fee in a type of case in which the usual fee is less than one-third of that amount.

The board determined that "[b]ecause [Fordham] had never tried an OUI case or appeared in the district court, [Fordham] spent over 200 hours preparing the case, in part to educate himself in the relevant substantive law and court procedures." Fordham's inexperience in criminal defense work and OUI cases in particular cannot justify the extraordinarily high fee. It cannot be that an inexperienced lawyer is entitled to charge three or four times as much as an experienced lawyer for the same service. A client "should not be expected to pay for the education of a lawyer when he spends excessive amounts of time on tasks which, with reasonable experience, become matters of routine." *Matter of the Estate of Larson*, 103 Wash. 2d 517, 531 (1985). "While the licensing of a lawyer is evidence that he has met the standards then prevailing for admission to the bar, a lawyer generally should not accept employment in any area of the law in which he is not qualified. However, he may accept such employment if in good faith he expects to become qualified through study and investigation, as long as such preparation would not result in unreasonable delay or expense to his client." Model Code of Professional Responsibility EC 6-3 (1982). Although the ethical considerations set forth in the ABA Code of Professional Responsibility and Canons of Judicial Ethics are not binding, they none-

theless serve as a guiding principle. See S.J.C. Rule 3:07, as appearing in 382 Mass. 768 (1981) (Ethical Considerations "are not adopted as a rule of this court, but those Ethical Considerations form a body of principles upon which the Canons of Ethics and Disciplinary Rules, as herein adopted, are to be interpreted").

DR 2-106 (B) provides that the third factor to be considered in ascertaining the reasonableness of a fee is its comparability to "[t]he fee customarily charged in the locality for similar legal services." The hearing committee made no finding as to the comparability of Fordham's fee with the fees customarily charged in the locality for similar services. However, one of bar counsel's expert witnesses testified that he had never heard of a fee in excess of $15,000 to defend a first OUI charge, and the customary flat fee in an OUI case, including trial, "runs from $1,000 to $7,500." Bar counsel's other expert testified that he had never heard of a fee in excess of $10,000 for a bench trial. In his view, the customary charge for a case similar to Timothy's would vary between $1,500 and $5,000. One of Fordham's experts testified that she considered a $40,000 or $50,000 fee for defending an OUI charge "unusual and certainly higher by far than any I've ever seen before." The witness had never charged a fee of more than $3,500 for representing a client at a bench trial to defend a first offense OUI charge. She further testified that she believed an "average OUI in the bench session is two thousand [dollars] and sometimes less." Finally, that witness testified that she had "heard a rumor" that one attorney charged $10,000 for a bench trial involving an OUI charge; this fee represented the highest fee of which she was aware. The other expert witness called by Fordham testified that he had heard of a $35,000 fee for defending OUI charges, but he had never charged more than $12,000 (less than twenty-five per cent of Fordham's fee).

Although finding that Fordham's fee was "much higher than the fee charged by many attorneys with more experience litigating driving under the influence cases," the hearing committee nevertheless determined that the fee charged by Fordham was not clearly excessive because Clark "went into the relationship with Fordham with open eyes," Fordham's fee fell within a "safe harbor," and Clark acquiesced in Fordham's fee by not strenuously objecting to his bills. The

board accepted the hearing committee's analysis apart from the committee's reliance on the "safe harbor" rule.

The finding that Clark had entered into the fee agreement "with open eyes" was based on the finding that Clark hired Fordham after being fully apprised that he lacked any type of experience in defending an OUI charge and after interviewing other lawyers who were experts in defending OUI charges. Furthermore, the hearing committee and the board relied on testimony which revealed that the fee arrangement had been fully disclosed to Clark including the fact that Fordham "would have to become familiar with the law in that area." It is also significant, however, that the hearing committee found that "[d]espite Fordham's disclaimers concerning his experience, Clark did not appear to have understood in any real sense the implications of choosing Fordham to represent Timothy. Fordham did not give Clark any estimate of the total expected fee or the number of $200 hours that would be required." The express finding of the hearing committee that Clark "did not appear to have understood in any real sense the implications of choosing Fordham to represent Timothy" directly militates against the finding that Clark entered into the agreement "with open eyes."

That brings us to the hearing committee's finding that Fordham's fee fell within a "safe harbor." The hearing committee reasoned that as long as an agreement existed between a client and an attorney to bill a reasonable rate multiplied by the number of hours actually worked, the attorney's fee was within a "safe harbor" and thus protected from a challenge that the fee was clearly excessive. The board, however, in reviewing the hearing committee's decision, correctly rejected the notion "that a lawyer may always escape discipline with billings based on accurate time charges for work honestly performed."

The "safe harbor" formula would not be an appropriate rationale in this case because the amount of time Fordham spent to educate himself and represent Timothy was clearly excessive despite his good faith and diligence. Disciplinary Rule 2-106 (B)'s mandate that "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved, would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee," creates explicitly

an objective standard by which attorneys' fees are to be judged. We are not persuaded by Fordham's argument that "unless it can be shown that the 'excessive' work for which the attorney has charged goes beyond mere matters of professional judgment and can be proven, either directly or by reasonable inference, to have involved dishonesty, bad faith or overreaching of the client, no case for discipline has been established." Disciplinary Rule 2-106 plainly does not require an inquiry into whether the clearly excessive fee was charged to the client under fraudulent circumstances, and we shall not write such a meaning into the disciplinary rule. See *Private Reprimand PR-87-14*, 5 Mass. Att'y Discipline Rep. 501, 502 (1987) (violation of DR 2-106 [A] and [B], as appearing in 382 Mass. 772 [1981] found even where "no evidence of bad faith on the part of respondent"); *Matter of the Discipline of an Attorney*, 2 Mass. Att'y Discipline Rep. 115, 117 (1980) (violation of DR 2-106 [A] and [C], as appearing in 382 Mass. 772 [1981] even though no "overreaching or improper motivation").

Finally, bar counsel challenges the hearing committee's finding that "if Clark objected to the numbers of hours being spent by Fordham, he could have spoken up with some force when he began receiving bills." Bar counsel notes, and we agree, that "[t]he test as stated in the DR 2-106 (A) is whether the fee 'charged' is clearly excessive, not whether the fee is accepted as valid or acquiesced in by the client." Therefore, we conclude that the hearing committee and the board erred in not concluding that Fordham's fee was clearly excessive.

Fordham argues that our imposition of discipline would offend his right to due process. A disciplinary sanction constitutes "a punishment or penalty" levied against the respondent, and therefore the respondent is entitled to procedural due process. *In re Ruffalo*, 390 U.S. 544, 550 (1968). *Matter of Kenney*, 399 Mass. 431, 436 (1987) ("attorney has a substantial property right in his license to practice law"). Fordham contends that the bar and, therefore, he, have not been given fair notice through prior decisions of this court or the express language of DR 2-106 that discipline may be imposed for billing excessive hours that were nonetheless spent diligently and in good faith. *Commonwealth* v. *Sefranka*, 382 Mass. 108, 110 (1980), quoting *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926) ("An essential principle of

due process is that a statute may not proscribe conduct 'in terms so vague that men of common intelligence must necessarily guess at its meaning'"). It is true, as Fordham asserts, that there is a dearth of case law in the Commonwealth meting out discipline for an attorney's billing of a clearly excessive fee. There is, however, as we have noted above, case law which specifically addresses what constitutes an unreasonable attorney's fee employing virtually the identical factors contained within DR 2-106. See *Mulhern* v. *Roach*, 398 Mass. 18, 25-30 (1986); *McLaughlin* v. *Old Colony Trust Co.*, 313 Mass. 329, 335 (1943); *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933). See also *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 611 (1991) ("factors . . . to be considered in determining whether a lawyer's fee is fair and reasonable have been amply discussed in the cases"). More importantly, the general prohibition in DR 2-106 (A) that "[a] lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee," is followed by eight specific, and clearly expressed, factors, to be evaluated by the standard of "a lawyer of ordinary prudence," in determining the propriety of the fee. Contrast *Gentile* v. *State Bar of Nev.*, 501 U.S. 1030, 1049 (1991), quoting *Grayned* v. *Rockford*, 408 U.S. 104, 112 (1972) (grammatical structure of attorney disciplinary rule and lack of clarifying interpretation by State court forced attorney to "guess at [the rule's] contours" thus failing to "provide 'fair notice to those to whom [it] is directed' "). In addition, nothing contained within the disciplinary rule nor within any pertinent case law indicates in any manner that a clearly excessive fee does not warrant discipline whenever the time spent during the representation was spent in good faith. The fact that this court has not previously had occasion to discipline an attorney in the circumstances of this case does not suggest that the imposition of discipline in this case offends due process. See *Commonwealth* v. *Twitchell*, 416 Mass. 114, 123, 125 n.13 (1993) (defendants not deprived of "fair warning" that particular conduct was proscribed by penal statute where criminal liability depended on "degree" of conduct); *Matter of Saab*, 406 Mass. 315, 324 n.13 (1989) (absence of codified standards to govern attorney discipline proceedings does not offend due process). We reject Fordham's due process argument.

In charging a clearly excessive fee, Fordham departed

substantially from the obligation of professional responsibility that he owed to his client. The ABA Model Standards for Imposing Lawyer Sanctions § 7.3 (1992) endorses a public reprimand as the appropriate sanction for charging a clearly excessive fee. We deem such a sanction appropriate in this case. Accordingly, a judgment is to be entered in the county court imposing a public censure. The record in this case is to be unimpounded.

*So ordered.*