Wilson, Paul D., J.
In 2006 and 2007, Defendant Gargano, a Cambridge lawyer, represented Plaintiff in connection with criminal charges of indecent assault and battery.[1] Gargano charged Plaintiff $120,000 for his representation. Plaintiff later decided that the fee was excessive, and filed this lawsuit.
The excessive fee claim was tried to a jury on November 19-21, 2013. I presided over the trial. The jury answered four special questions, finding that Plaintiff and Gargano entered into an agreement under which Gargano would represent Plaintiff; that Gargano agreed to charge for services on an hourly basis; that the $120,000 was an unreasonable fee; and that $90,000 was the portion of the fee that was unreasonable.
Plaintiffs Complaint also contained a damages claim under M.G.L.c. 93A, and a claim for an accounting. Before trial, after discussing the handling of those claims with counsel, I ruled that I would decide those issues myself, based on the evidence at trial.[2] That is the purpose of this decision.
Based upon all the credible evidence, I make the following findings of fact and conclusions of law.
Findings of Fact
In 2006, Plaintiff, who had no previous criminal record, was charged in Quincy District Court with five counts of indecent assault and battexy.[3] These charges arose from his interactions with two female employees (one in her late teens or early 20s and one in her 50s) in the pizza shop that Plaintiff owned and operated.[4] Jay W. Carney, an experienced and respected criminal defense lawyer who testified as an expert witness for Plaintiff, called these charges “serious but not complex.” Carney also testified that Plaintiff could have been charged with these offenses in the Superior Court, and the prosecutor’s decision to keep the case in the District Court indicated that the district attorney’s office had decided that the facts involved in these particular alleged offenses were not serious enough to warrant a Superior Court prosecution. I credit this testimony.
Plaintiff is an immigrant from Greece, who came to this country the age of 30. His wife Effie Karasavas, a Greek immigrant who arrived in this country at the age of 10, was involved in the management of the pizza shop. Effie’s English is considerably better than Plaintiffs. She took the lead in handling the business aspects of the pizza shop, and was heavily involved in Plaintiffs dealings with Gargano.
In their effort to find counsel to represent Plaintiff in connection with the criminal charges, Plaintiff and Effie and Effie’s cousin (whom Gargano represented in the past) met with Gargano and two of his associates in late September 2006. Gargano told Plaintiff to come back after he had received a document from the court about the charges. I disbelieve Gargano’s testimony that he informed Plaintiff at this meeting that representation would cost him $120,000, and find instead that there was no discussion of fees at this brief meeting.
When the court document mentioned by Gargano arrived, Plaintiff brought it to Gargano, in a meeting on October 3, 2006 attended by the same people. Plaintiff explained that this was a first offense. Gar-gano explained that the charges were serious, jail was a good possibility, and defending the case would involve much work by Gargano and his staff. I credit Plaintiffs testimony that Gargano told him that the cost might be “up to $80,000.” I disbelieve Gargano’s testimony that he told Plaintiff that he would not handle the case for less than $120,000. I also disbelieve Gargano’s testimony that he said that the billing arrangement would be a flat fee of $120,000, among other reasons because that testimony is contradicted by the fee agreement that he asked Plaintiff to sign. Instead, I find that there was no discussion about how Gargano’s fees would be calculated.
At this meeting, Gargano presented Plaintiff with a fee agreement, and asked him to sign it. See Trial Exhibit 1. Plaintiff signed the agreement, even though he did not understand it because of his limited ability to read the English language, and Gargano did not explain it to him. Neither Gargano nor anyone else *625 from his firm signed the agreement on behalf of the other party, which the signature line identified as “Gargano and Associates, P.C.”[5] I disbelieve Gargano’s testimony that he never saw this fee agreement until after the criminal case was concluded, and that the agreement was a “mistake by my office.”
On its second and final page, Plaintiff signed the fee agreement a second time to acknowledge receipt of a copy of the agreement. In fact, Effte asked Gargano for a copy of the agreement, which Gargano promised to provide her at the end of the meeting. Gargano never provided Plaintiff or Effie with a copy of the agreement.
The heading on the agreement stated, “Gargano & Associates General Representation—Hourly Fee.” The introductory section of the agreement defined Gargano and Associates, P.C., as the “Attorney/Firm.”
Paragraph 1 provided that Plaintiff would pay a “$40,000 non-refundable retainer.” Gargano testified that he did not take a non-refundable retainer from Plaintiff because “I don’t believe in it.” I disbelieve this testimony, among other reasons because it is contradicted by the fee agreement, which appears to be a form agreement used by his firm in cases involving hourly billing.
Paragraph 1 of the agreement further provided that the $40,000 retainer would be applied against bills for legal services and costs and disbursements. Paragraph 2 stated that time charges would be billed at a partner rate of $600 per hour, a senior associate rate of $500 per hour, an associate rate of $400 per hour, and a paralegal rate of $100 per hour. According to paragraph 4, time charges would be billed at a minimum of one-quarter of an hour. However, the fee agreement nowhere provided that Gargano or his firm would actually send bills to Plaintiff detailing his charges for time and costs, or showing the application of the retainer against bills for legal services and costs. The fee agreement did state, in paragraph 3, that Gargano might do “[finterim billing” if the retainer was exhausted, and further provided that failure to pay an interim bill promptly “will permit the Attorney/Firm, after notice to the Client, to terminate representation of the Client as permitted by applicable rules and law.” The fee agreement did not specify what information would be contained in an “interim bill.”
When Gargano presented this fee agreement to Plaintiff in October 2006, Plaintiffs expert Carney was charging his criminal defense clients $450 per hour. I credit Carney’s testimony that only a very few lawyers working at large firms engaged in white-collar defense work were charging $600 per hour for criminal defense work in 2006.[6]
At this meeting, Plaintiff provided Gargano with a check for $40,000. Consistent with the language of the agreement that this was a non-refundable retainer, Gargano deposited that check almost immediately into his firm’s operating account, rather than putting into a client trust account.
About six weeks later, a Gargano associate asked Plaintiff to come to Gargano’s office to meet. Plaintiff assumed that he would be meeting with Gargano to discuss the progress of his case. Gargano was not present, however, being on vacation in the Cayman Islands. The associate asked Plaintiff for another $40,000, and Plaintiff provided a check for that amount on November 15, 2006.
Gargano had now collected $80,000 from Plaintiff after six weeks on the case. Gargano had not provided Plaintiff with any legal bills or other explanation of how, or if, Gargano had earned the first $40,000. In fact, Gargano never sent legal bills to Plaintiff throughout their relationship, nor did he ever explain how much time Gargano’s firm had expended or what disbursements it had incurred on Plaintiffs behalf. It would have been difficult for Gargano to do so, because Gargano and his staff kept no time records concerning Plaintiffs case.
In the course of Gargano’s representation of Plaintiff, Gargano attended a few hearings at Quincy District Court. Gargano also filed approximately 14 motions. A few of them were routine, such as a request for discovery. Some were so aggressive that an experienced criminal defense lawyer should have known that they were doomed to failure, such as a motion to dismiss because the victims could not state the exact dates of the offenses. Some had no basis in law, such as a motion to dismiss on the ground that the victims were refusing to talk to Gargano, which is their right under settled law. Gargano also tried to bring matters before the Appellate Division of the District Court, and the Single Justice of the Appeals Court, following procedures that apply only to civil, not criminal, cases.
Plaintiffs trial was scheduled for May 24, 2007. In March 2007, Gargano demanded that Plaintiff pay him another $50,000. Plaintiff responded that he had no more money. Gargano stated that if Plaintiff did not make this additional payment, Gargano would not take the case to trial. Instead, Gargano suggested, Plaintiff could “hire” as trial counsel Gargano’s associate who had been working on the case. In response to the statements by Gargano, Plaintiff provided Gargano with another check for $10,000 on March 7, 2007. Then, by borrowing from relatives, including Plaintiffs brother in Greece, Plaintiff provided Gargano with yet another $10,000 check on May 8, 2007, and a $20,000 check on May 16, 2007, just eight days before the scheduled trial date. Thus the total paid by Gargano reached $120,000. Gargano did not deposit any of the funds he received from Plaintiff over the entire course of their attomey/client relationship into a client trust account, but rather deposited each check into his law firm’s operating account.
Gargano testified that he never asked Plaintiff for any money beyond the first $80,000.1 disbelieve this testimony, which is contradicted by the fact that Plaintiff accepted the final $40,000 in three checks between March 7 and May 16, 2007.
Gargano also testified that he provided legal services to Plaintiff worth more than $120,000. Specifically, Gar-gano testified that he worked 150 hours on the case, *626 which he said would justify a legal fee of $160,000. However, at Gargano’s billing rate of $600 per hour, 150 hours would result in a fee of $90,000, not $160,000. Perhaps Gargano’s associates had worked sufficient hours to justify the additional $70,000, but Gargano did not say this. In any event, other than Gargano’s testimony about his own 150 hours, which I do not credit, there is no evidence in the record about the number of hours spent by any lawyers working on Plaintiffs case, because Gargano made the choice not to record the hours that he and his associates worked on this case.
On the trial date, a deal was struck and approved by the court. The charges against Plaintiff were continued without a finding, and Plaintiff was placed on probation. I credit the testimony of expert witness Carney that this is by far the most common outcome in the District Court for first offenders. Gargano did not want Plaintiff to take this deal, because Gargano instead intended to win at trial.
A condition of probation was that Plaintiff meet with a psychiatrist. At first Plaintiff was not cooperative. As a result, the court held one or two probation revocation hearings. Plaintiff sought the help of Gargano, who made filings and attended hearings (at most two hearings) with him. Eventually, Plaintiff was persuaded to become compliant with the conditions of his probation. When Plaintiff successfully completed his probation, the charges against him were dismissed.
One of Gargano’s associates sent Plaintiff a letter seeking $15,000 for representing Plaintiff in connection with the probation violations. Plaintiff did not make a further payment for Gargano’s services concerning the probation issues. At trial, Gargano conceded that the letter seeking the $15,000 came from his office, but insisted that he did not seek payment for representing Plaintiff in these probation matters, and that he did not recognize the signature of his associate. I disbelieve this testimony.
In the course of these probation proceedings, Gargano filed a document in court containing specific details of Plaintiffs conversations with the psychiatrist. I accept expert witness Carney’s testimony that such revelations should never happen, because the judge is interested only in whether Plaintiff was living up to his probation obligations by meeting with the psychiatrist, but was not interested in the content of those private conversations.
Expert witness Carney gave an opinion that Gargano’s fee was excessive. Carney assumed in Gargano’s favor that the billing rates were not excessive (that is, that Gargano’s work was worth the $600 per hour rate being charged at that time only by a few Massachusetts criminal defense lawyers and only in white-collar crime cases). Carney testified that multiplying those rates by the number of expected hours would result in a maximum legal fee of $22,800 if the case ended in a plea agreement, and $30,000 if it ended with trial. Carney then gave Gargano the benefit of even more doubt, saying that a $30,000 fee might have been reasonable here even with a resolution short of trial because of the added time required to deal with Plaintiffs difficulty with the English language and assuming that, as Gargano testified, Gargano spent an unusual amount of time meeting with and taking statements from friends and family members of Plaintiff who wanted to testify on his behalf. I credit this testimony, and find that, if anything, Carney was being overly generous in stating that only $90,000 of the fee was excessive.
Plaintiff also presented Thomas Maffei as an expert witness. Maffei is an experienced lawyer who served on the Board of Bar Overseers for four years, and often teaches legal ethics. Because of their subj ect matter, Maffei’s expert opinions, which I summarize below, are hybrids of fact and law. To the extent that Maffei’s opinions are viewed as matters of fact, I credit this testimony and adopt as findings of fact those opinions that I describe below. To the extent that his opinions are viewed as matters of law, I agree with his legal interpretations, and adopt his opinions in making my conclusions of law.
Maffei testified that a professional corporation such as Gargano & Associates is an entity created for tax purposes, and the use of the corporate form does not relieve the individual attorney who practices in a professional corporation from personal liability for legal malpractice or from his personal ethical obligations. Maffei opined that, as an ethical matter, an attorney is the responsible party concerning ethical obligations regarding legal fees, even if a client signs a fee agreement with a corporate entity where the attorney practices law.
Maffei further testified that Gargano violated his ethical responsibilities in several ways. For example, a non-refundable retainer is a per se ethical violation, because it places economic pressure on the client not to end an attorney/client relationship if he is dissatisfied with the attorney. In addition, Gargano violated his ethical responsibilities when he placed in his operating account rather than a trust account the funds that Plaintiff had paid him that he had not yet earned, and by failing to provide Plaintiff with itemized bills about the services he and his firm had rendered before placing the legal fees for those services into his law firm’s operating account. Expert witness Carney testified to the same effect, and I credit his testimony, as well as that of Maffei, as to these ethical violations.
Conclusions of Law
1. Chapter 93A
M.G.L.c. 93A, §2 declares unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” M.G.L.c. 93A, §9(3) allows a person injured by a violation of section 2 to sue the wrongdoer for damages. A plaintiff who prevails in such a lawsuit is entitled to actual damages, id., and, under section 9(4), to his reasonable attorneys fees and costs incurred in connection with the lawsuit. In addition, “if the court finds that the use or employment of the act or practice *627 was a willful or knowing violation of said section two,” then the plaintiff is entitled to “up to three but not less than two times” his actual damages. Id.
Chapter 93A applies to the attomey/client relationship, and specifically to the fees that attorneys charge their clients. Guenard v. Burke, 387 Mass. 802, 809 (1982) (an attorney's reliance on a fee agreement that violated ethical rules “was, as a matter of law, an unfair or deceptive act or practice”); see also Doucette v. Kwait, 392 Mass. 915 (1984) (affirming that a lawyer violated Chapter 93A by collecting an additional fee from a client beyond that permitted by their contingent fee agreement).
By charging Plaintiff a $40,000 nonrefundable retainer, Gargano made it difficult for Plaintiff to replace Gargano as Plaintiffs lawyer, because Plaintiff could only do that if he was willing to leave behind the $40,000 retainer, no matter how much of that amount had been earned by Gargano. This particular Plaintiff was especially vulnerable in that regard, because he was not a wealthy man, which was obvious to Gar-gano. Plaintiff was also unsophisticated in criminal matters, and in dealing with criminal defense lawyers. For example, Plaintiff did not know that the $40,000 nonrefundable retainer considerably exceeded a reasonable fee for all the work that Gargano was going to do for Plaintiff. Taking all these factors into account, I conclude that it was an unfair or deceptive act for Gargano to charge Plaintiff a $40,000 nonrefundable retainer, and that Gargano acted willfully or knowing.
Rule 1.5 of the Massachusetts Rules of Professional Conduct[7] states that a “lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.” A juiy has already determined that $90,000 of Gargano’s fee was unreasonable. I now conclude that $90,000 of Gargano’s fee was clearly excessive within the meaning of Rule 1.5. I also conclude that Gargano committed an unfair or deceptive act or practice in charging a fee that was four times greater (at the veiy least) than the highest reasonable fee. Coupling that unusual degree of excessiveness with the unusually aggressive billing rates charged by Gargano, I conclude that Gargano acted willfully or knowingly in charging the clearly excessive fee. Cf. In Re Fordham, 423 Mass. 481 (1996) (Supreme Judicial Court disciplined attorney for charging an excessive fee of $50,000, because one expert witness testified that he never heard of a fee greater than $15,000 for the same services, and another expert witness testified that he never heard of a fee greater than $10,000 for those services).
In addition, Gargano again violated Chapter 93A when he sought an additional $15,000 from Plaintiff for his work with regard to the probation violations. That fee would have been excessive in two senses: both as constituting a considerable overcharge in and of itself for the limited services rendered by Gargano with regard to the probation issues, and as increasing the size of the already greatly excessive total fee for Gargano’s representation of Plaintiff. It does not matter that Plaintiff did not pay that fee, for reasons that I infer had to do with the fact that Plaintiff had exhausted all of his and his extended family’s resources. I conclude that even an unsuccessful attempt to charge Plaintiff an additional $15,000 for these limited services was itself an unfair or deceptive act or practice, and that it was knowing or willful.
When Plaintiff gave the $40,000 retainer to Gargano at the outset of their relationship, Gargano had not yet earned anything, and so those funds remained the property of Plaintiff. Therefore Rule 1.15(b) of the Massachusetts Rules of Professional Conduct required Gar-gano to keep those funds segregated in a client trust account until, as Gargano promised in the fee agreement, that retainer was “applied against both the bills for legal services performed for the Client and the cost and disbursements.” As Gargano earned those funds, he was required to transfer them from a client trust account to his own operating account. Id., Rule 1.15(b) (2)(ii). As he transferred those funds to his own account, Gargano was required to provide Plaintiff with, “in writing (i) an itemized bill or other accounting showing the services rendered, (ii) written notice of amount and date of the withdrawal, and (iii) a statement of the balance of the client’s funds in the trust account after the withdrawal.” Id., Rule 1.15(d)(2). Gargano violated each of these ethical requirements.
I conclude that Gargano’s handling of Plaintiff s funds in general, including without limitation his violation of these ethical requirements, constituted an unfair or deceptive act or practice. I further conclude that Gargano acted willfully or knowingly. I base this conclusion primarily, but not exclusively, on Gargano’s deliberate failure to provide a Plaintiff at any time with a written accounting of the services he and his firm had rendered, despite the implication in the fee agreement that Plaintiff would be billed an “Hourly Fee” calculated down to the quarter of an hour. I also base this conclusion on the fact that Gargano more than once sought and obtained additional legal fees from Plaintiff, even though he had never accounted for how and whether he had earned the earlier fees.
About 10 weeks before the scheduled trial, Gargano threatened not to represent Plaintiff at trial unless Plaintiff paid him another $50,000 in legal fees, even though Gargano had not accounted in any way for the $80,000 in legal fees already paid by Plaintiff. By this tactic Plaintiff succeeded in squeezing another $40,000 in legal fees from Plaintiff. Particularly (but not exclusively) in light of the imminence of the trial, and Plaintiffs lack of other options because of the fees he had already paid Gargano, I conclude that Gargano’s threat to withdraw was a breach of his obligations to his client. It was also an unfair or deceptive act or practice, and it was willful or knowing.
In sum, I conclude that Gargano committed several unfair and or deceptive acts or practices that violated section 2 of Chapter 93A. In each case, I find that his *628 acts were knowing or willful. Because of the number of violations of Chapter 93A, and the fact they occurred not in an ordinary commercial relationship but in attorney/client relationship in which the attorney owes a higher duty to the other party, I conclude that it is appropriate to award treble damages to Plaintiff. The jury has found that the legal fee was excessive by $90,000. I concur, and conclude that single damages for the Chapter 93A violations equal $90,000. Therefore I award Chapter 93A treble damages of $270,000. Plaintiff is also entitled to his reasonable attorneys fees and costs incurred in connection with this lawsuit.
2. Accounting
Plaintiffs claim for an accounting is based on Rule 1.15(d) of the Massachusetts Rules of Professional Conduct. Rule 1.15(d)(2) required that each time Gargano paid himself out of Plaintiffs funds, Gargano had to provide Plaintiff with, “in writing (i) an itemized bill or other accounting showing the services rendered, (ii) written notice of the amount and date of the withdrawal, and (in) a statement of the balance of the client’s funds in the trust account after withdrawal.” Rule 1.15(d)(1) required Gargano to “promptly render a full written accounting” upon “final distribution” of Plaintiffs funds.
Gargano never rendered any accounting to Plaintiff concerning the $120,000 in legal fees that Gargano charged Plaintiff. At trial, Gargano justified his failure to do so by saying that he and Plaintiff had agreed on a flat fee of $120,000.1 do not reach the question of whether a flat fee arrangement would have required the accountings specified by Rule 1.15(d), because I do not believe Gargano’s testimony, and I have found that the parties agreed on an hourly fee arrangement. Therefore, Gargano violated Rule 1.15(d) by his failure to provide an accounting.
Plaintiff argues that this ethical violation should cause me to order that Gargano deposit the sum of $30,000—that is, the only fees that the jury (and I) did not find to be excessive—with the clerk of the court, and that Gargano then provide an itemized bill to Plaintiff for services rendered. If the bill is for less than $30,000, then Plaintiff would be entitled to the excess, and, if Plaintiff disputes any items on the bill, Plaintiff would be entitled to arbitrate that disagreement.
I decline to take that action. First, the Rules of Professional Conduct do not themselves create a claim for a wronged client. Second, the Supreme Judicial Court made clear in Guenard that, even when a lawyer commits a per se violation of Chapter 93A by relying on an unenforceable fee agreement, the client is not entitled to a windfall; rather, the lawyer still is entitled to be paid the value of his services. 387 Mass, at 807-08. In Guenard, therefore, the Supreme Judicial Court remanded the case for a jury trial about the fair value of the lawyer’s services. Id. at 808-09.
Here, it is beyond dispute that Gargano’s services were of some value to Plaintiff. The criminal case was “serious but not complex,” as expert witness Carney testified, and the result of that case was that the charges against Plaintiff were continued without a finding, and ultimately dismissed after a period of probation.
In Guenard, the Supreme Judicial Court found it necessary for the Superior Court to hold a jury trial after remand to determine the value of the lawyer’s services. In this case, however, Plaintiff has already had a jury trial in the Superior Court on that subject. At that trial, Plaintiff himself presented Carney’s expert opinion that Gargano’s services were worth a maximum of $30,000. The jury apparently accepted that testimony, and found that $30,000 was the portion of Gargano’s fee that was not excessive. I will not disagree with the jury on that point. Therefore I conclude that the jury verdict, and my adoption of it, constitutes the accounting sought by Plaintiff. I find in Plaintiffs favor on his claim for an accounting, but rule that he has had his accounting, at the trial of this case.
Conclusion and Order
Based on the foregoing Findings of Fact and Conclusions of Law, Judgment is to Enter in favor of Plaintiff and against Defendant on Count III of the Complaint, for violations of M.G.L.c. 93A, §2, for treble damages, in the total (that is, already trebled) amount of $270,000, plus Plaintiffs reasonable attorneys fees and costs incurred in prosecuting this lawsuit. Plaintiff shall serve on Defendant an affidavit certifying those reasonable attorneys fees and costs within 30 days under Superior Court Rule 9A, to be filed with the court thereafter, along with Defendant’s opposition, if any. Judgment is to Enter in favor of Plaintiff and against Defendant on Count II of the Complaint, for an accounting, but the jury verdict, and my adoption of it, constitutes the required accounting, and therefore Plaintiff shall take nothing further as to Count II.

The corrections to the Findings of Fact and Conclusions of Law dated January 27, 2014 contained in this document are not substantive; they merely add missing years to two case citations, and correct the identity of a witness whose testimony was wrongly attributed in a footnote to a different witness by oversight.

After trial, Plaintiff sought to introduce into evidence two additional documents that I had ruled inadmissible during the trial of the excessive fee claim: a Board of Bar Overseers Petition for Discipline against Gargano dated August 27, 2009, and the resulting Memorandum of Decision of a Single Justice of the Supreme Judicial Court dated July 6, 2011, which suspended Gargano indefinitely from the practice of law. Those documents concerned ethical violations by Gargano in three other cases, and did not mention his representation of Plaintiff. I excluded those documents at trial primarily because I found that their probative value was outweighed by the danger of prejudice should the jury see them. Because the danger of unfair prejudice is lessened when documents of this nature are considered by a judge rather than a jury, I have admitted those two documents into the evidence before me. Having reviewed them, I find that they have little probative value, because they postdate the events at issue in today’s case, and therefore could not have put Gargano on notice that his actions in today’s case were unethical, and therefore perhaps unfair or deceptive within the meaning of Chapter 93A. Although the ethical violations recounted in the Petition and the Order occurred before or *629 simultaneously with Gargano’s representation of this Plaintiff, I conclude that this fact does not make them relevant to this case, and I have not relied on either of these documents in making these findings and conclusions.

It is possible that some (but not all) of these five charges were for simple assault and battery; the record is unclear on this point. It only matters that at least some of the charges were for indecent assault and battery; the exact number is irrelevant to my decision.

There was some testimony that three female employees originally claimed that Plaintiff had inappropriately touched them, but it appears that the criminal charges related to only two employees. This ambiguity is irrelevant to my decision.

Just before trial, Gargano moved to dismiss the Complaint on the ground that this law firm, not Gargano personally, was the parly who charged fees to Plaintiff. I denied that motion. Because I conclude below that it is the ethical responsibility of a lawyer, not his law firm, not to charge excessive fees, I will ignore the distinction between Gargano and his law firm in these Findings of Facts, because that distinction is immaterial.

Carney could identify by name only one lawyer charging $600 per hour for criminal defense work in 2006: R. Robert Popeo, whom Carney described as a truly great lawyer and one of the leading criminal defense lawyers in Massachusetts.

This lawsuit is a client’s claim against his attorney for damages, not a disciplinary matter brought by the Board of Bar Overseers against the lawyer, and I do not mean to imply otherwise by citing the Rules of Professional Conduct. However, the Rules of Professional Conduct outline the behavior expected of any lawyer toward his clients, and therefore I find Gargano’s violations of those Rules as some evidence that he acted unfairly or deceptively toward Plaintiff. I do not find that these particular violations of the Rules of Professional Conduct constitute per se violations of Chapter 93A, as the Supreme Judicial Court did in Guenard, 387 Mass, at 809. Rather, I consider violations of those Rules as evidence that, combined with other evidence that I cite in these Conclusions of Law, leads me to conclude that Gargano violated Chapter 93A.