## IN THE MATTER OF THE DISCIPLINE OF AN ATTORNEY.

Suffolk. January 3, 2007. - April 20, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Attorney at Law,* Disciplinary proceeding, Informal admonition, Deceit. *Due Process of Law,* Attorney disciplinary proceeding. *Board of Bar Overseers.*

A private admonition, and not a suspension, was the appropriate discipline for an attorney who had entered into a contingent fee agreement that capped his clients' obligation for out-of-pocket expenses on a certain matter, and who had failed fully to disclose, to bar counsel and to a client, information regarding the amount of funds the attorney's firm had received in settlement of the matter, where the attorney's conduct had occurred while he was a new attorney in his first legal position and dealing with a more experienced employer, and where the attorney's conduct had been motivated not by a desire to hide the funds from his clients, but by his desire to avoid a confrontation with one particular client. [829-835]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on August 4, 2005.

The case was reported by *Greaney,* J.

*Roger Geller,* Assistant Bar Counsel.

*J. Owen Todd* (*Edward Foye* with him) for the respondent.

IRELAND, J. This bar discipline case requires us to determine the appropriate sanction for the respondent attorney where the Board of Bar Overseers (board) recommended that he receive an admonition. Bar counsel objected to the recommended discipline, and the board filed an information with the county court pursuant to S.J.C. Rule 4:01, § 8 (4), as appearing in 425 Mass. 1309 (1997). A single justice of this court reserved and reported the case without decision. We conclude that an admonition is warranted.

1. We summarize the findings of fact made by the hearing committee and adopted by the board, many of which were based on a stipulation of the parties. The respondent, who had been a stockbroker for two years, was admitted to the practice of law

in December, 1994. He was contacted in the spring of 1995 by Attorney Peter Lagorio, a law school classmate. Lagorio asked the respondent to represent a stockbroker, Randall Lindberg, to pursue Lindberg's claims for breach of an employment agreement. In addition to Lindberg, the respondent eventually agreed to represent sixteen other stockbrokers (brokers), including Shandal von Wood, against the same employer. The respondent entered into written fee agreements with each broker that allowed the respondent a twenty-five per cent contingent fee and charged each broker an advanced payment for costs and expenses, which were capped at $300.

As a new attorney, the respondent did not have an office or experience with IOLTA or office operating accounts. Of the $5,100 in advanced payments he collected, he used $500 for costs associated with the case, and the rest for general office expenses.[1]

In the late fall of 1995, less than one year after his admission to the bar, the respondent obtained his first legal position when he was hired as an associate in the law office of John C. Mc-Bride, who promised the respondent a weekly salary, plus one-third of any fees generated from business the respondent brought to the firm. Shortly thereafter, the respondent informed McBride about his broker clients and the contingent fee agreement, but not about either the cap on expenses or that he already had received money from the brokers. He did not show McBride the actual agreements; he told McBride that McBride's expenses would be paid by the brokers. McBride agreed that the law firm would handle the case with the respondent continuing to work on it.

In November, 1995, the respondent informed all the brokers that he was employed by McBride and that McBride would as-

---

[1]The hearing committee credited the respondent's testimony that this money was deducted from the fee he earned in the case.

On appeal to the board, bar counsel argued that the board should find misconduct concerning the respondent's handling of this money. The board declined, noting that the petition for discipline did not charge the respondent with any impropriety concerning the expense money except for the capping of fees, that the hearing committee credited the respondent's testimony concerning this money, and that the brokers were refunded all monies they paid in excess of the original $300.

sist the respondent. Notwithstanding the written fee agreement, the brokers all agreed orally to pay McBride's expenses.

Ultimately, through the efforts of both attorneys, in July, 1997, an arbitration panel of the National Association of Securities Dealers found in favor of the brokers, awarding them a total of $342,175.[2] However, the employer failed to pay the award by the deadline of August, 1997. In an effort to pressure the employer to pay, the respondent filed, but did not serve, an involuntary bankruptcy petition against the employer. McBride entered into negotiations with the employer's attorney, and the pair worked out a payment plan that was reduced to writing on October 28, 1997. In relevant part, the plan called for an immediate payment of $50,000, a second payment of $50,000 due on or before November 28, 1997, and a payment of $24,220.20 due on or before December 15, 1997.

Although the respondent informed at least some of the brokers, including von Wood, that the bankruptcy petition had been filed and that McBride was in negotiations to obtain a payment plan, neither the respondent nor McBride obtained each broker's permission prior to entering into the written payment agreement. The hearing committee found that McBride and the respondent believed, "with good reason, that the agreement was in the [brokers'] best interests."

The employer's attorney was instructed by McBride's office manager to transfer an immediate payment of $50,000 to McBride's business account. McBride's view was that this money was not client funds because he was going to take his attorney's fees and expenses out of the first $100,000 that was deposited.

The respondent learned, on October 28, of the payment plan agreement and the $50,000 payment. He did not know into which account McBride had deposited the money. In addition, at all relevant times, the respondent had no signatory authority over the business account or any authority to direct financial transactions at the firm. Under instructions from McBride, on October 29, the respondent telephoned all the brokers, spoke to between twelve and fifteen of them, and told them that the employer had agreed to a payment plan, that $50,000 had been

[2]The decision awarded a specific amount to each individual broker.

received, and that McBride wanted to apply the entire amount to his fees and expenses. After discussions with the respondent, all of the brokers except for von Wood, whom the respondent could not reach, agreed to McBride's use of the money.

On November 4, 1997, von Wood spoke to the respondent and learned of the settlement agreement and of the first payment of money. He objected to both and, in a subsequent letter to the respondent, stated that he was not consulted about the payment plan, that he never agreed to alter the terms of his original contingent fee agreement, and that he never agreed to pay any expenses "up front." The hearing committee did not credit von Wood's testimony that he never agreed to alter the terms of the contingent fee agreement concerning expenses.

From von Wood's letter, McBride learned for the first time that, under the terms of the contingent fee agreement, expenses were capped. He told the respondent that he was not bound by it, and that the respondent should work it out with von Wood. The respondent and von Wood agreed that the respondent would poll the other brokers, and ultimately all agreed that payments would be disbursed on a quarterly basis, beginning December 15, 1997. Over McBride's signature, the respondent sent a letter to the brokers on November 5, informing them of the settlement agreement, setting out the dates and amounts of expected payments from the employer, and stating that McBride had already received $50,000. Most important for subsequent events, the letter stated that there would be quarterly payments to the brokers of the amounts received. Neither this letter nor subsequent letters addressed the issue of expenses.

The employer failed to make any more payments as required by his agreement. On December 15, the respondent contacted all the brokers and asked for a two-day extension on their first scheduled quarterly payment so that he could go to New York, meet with the employer, and try to obtain payments. All agreed. The respondent traveled to New York on December 18 to talk to the employer. He informed the employer that another petition for involuntary bankruptcy had been filed. The employer agreed to transfer another $50,000 immediately, which was wired to McBride's business account. After his meeting with the employer, the respondent immediately telephoned broker Lind-

berg, who immediately telephoned another broker as well as Attorney Lagorio. The next day or shortly thereafter, the respondent contacted some of the other brokers as well as Attorney Lagorio, and informed them of the second payment of $50,000. The hearing committee credited the respondent's testimony, supported by Lindberg's testimony, that he never instructed anyone not to disclose the receipt of the second $50,000 to the other brokers, and the hearing committee found that he had reason to believe they would tell the other brokers.

On December 19, McBride informed the respondent that he was going to make a quarterly payment to the brokers based only on $50,000, rather than the $100,000 they had received. The respondent objected based on the agreement of November 5 that called for quarterly distribution of all payments received. When McBride claimed that the firm was entitled to the first $50,000 for fees and expenses, "[n]ot only did Respondent . . . remonstrate with . . . McBride concerning the distribution, but he also expressed his concerns to Attorney Lagorio." McBride then had checks totaling $24,975 issued to the brokers and the respondent sent an accompanying transmittal letter, which he drafted and McBride reviewed, to each of the brokers stating that the checks represented their "pro rata share of the [employer's $50,000 payment] minus fees to McBride and Associates." The letter itemized the fees and expenses. The hearing committee concluded that this letter was misleading because if any brokers had not known of the second $50,000 payment, it appeared as though only one payment of $50,000 had been received.[3]

On December 31, the respondent sent another letter to the brokers. This letter enclosed a copy of the October payment agreement between McBride and the employer and also stated, "On October 28, 1997, McBride and Associates received $50,000, which was distributed to all claimants on December 19, 1997. To date, [the employer] is in arrears on the remaining

---

[3]However, the hearing committee did not credit von Wood's testimony that he spoke with the respondent on or about December 19 and the respondent denied that he had received a second payment, in part because the respondent told several other brokers of the payment and in part because it was von Wood's practice to send letters to the respondent confirming the content of conversations and no such letter was received regarding this conversation.

payment schedule." The letter also advised the brokers not to disclose information contained in the letter because other parties with claims against the same employer had interfered with the settlement agreement to further their own interests. McBride did not review this letter before it was sent.

The hearing committee found that this letter also was misleading because it failed to mention that the October payment had been taken by McBride for fees and falsely implied that no other payments had been received. "However, as we have found above, Respondent . . . had reason to believe that most, if not all, of the brokers already knew of the second payment; we credit his testimony that the purpose of this letter was to advise the broker/clients not to discuss the [employer's] payments with others who were suing or had judgments against [the employer] in other matters."

In January, 1998, von Wood sent a letter to the Office of Bar Counsel, a copy of which was forwarded to the respondent and McBride, stating that McBride and the respondent had failed to pay him his full share of funds they had received by withholding money for costs in contravention of the contingent fee agreement. In response, McBride directed the respondent to reimburse von Wood. The respondent sent letters to von Wood and to the other brokers stating that the original contingent fee agreement was still in effect, that no more costs would be deducted, and that arrangements would be made to refund withheld costs to all the other brokers. The letters did not disclose the second payment of $50,000. Von Wood sent a letter to the respondent stating that he was satisfied with the resolution and had no further complaint.[4]

In response to von Wood's complaint, the respondent drafted,

---

[4]By April, 1998, all but one of the brokers had been reimbursed. Due to an accounting error, the estate of a broker who was deceased was reimbursed only in part by July, 1998, with the remaining balance of $1,450 paid in August, 2000.

- Moreover, in April, 1998, McBride and the respondent learned that the employer had been forced into involuntary bankruptcy by other parties. The brokers were advised concerning perfection of their claims in Bankruptcy Court, and McBride sent each broker his pro rata share of the previously withheld $50,000. The letter that accompanied the checks stated that a total of $100,000 had been received by the firm and that $50,000 had been withheld

and McBride reviewed, a letter to bar counsel dated February 18, 1998, in which McBride instructed the respondent just to answer the questions that bar counsel had asked.[5] Relevant to our purposes, the letter did not reveal to bar counsel that two payments of $50,000 were received by the firm. However, in subsequent letters to bar counsel, the respondent did disclose both payments. The hearing committee found this letter deliberately misleading.[6]

The hearing committee stated, "In light of the fact that . . . [the respondent] had disclosed the receipt of the December payment . . . to some of the [brokers] at the time of receipt and that the [brokers] often exchanged information with each other . . . , we find that the Respondents'[7] intentional concealment in letters of the receipt of that payment and misrepresentation that the October payment was disbursed in December were not part of a scheme to hide that payment, but rather an effort to avoid a confrontation with von Wood, whom they knew did not agree to the payment of fees 'up front'; there was no intent to hide the payment to deprive the [brokers] of their money in the long run[;] it was simply to avoid a confrontation with one of the [brokers] over the timing of the payments."

2. In November, 1999, bar counsel filed petitions for discipline against the respondent and McBride. Because Count Two against McBride and the single count against the respon-

by the firm for fees but that, with the employer in bankruptcy, future payments were in question.

[5] We see nothing in the record that reveals the questions that bar counsel had asked.

[6] The petition did not charge the respondent with deceiving bar counsel. To the extent that the hearing committee determined that the respondent violated disciplinary rules for this letter, we determine this to be error. See S.J.C. Rule 4:01, § 8 (3), as appearing in 425 Mass. 1308 (1997) (formal disciplinary proceedings instituted by filing petition "setting forth specific charges of alleged misconduct"); *Matter of Orfanello*, 411 Mass. 551, 556 (1992) (inappropriate to rule that attorney violated disciplinary rule that was not charged). However, because the letter to bar counsel was part of the parties' stipulation and thus part of the record before the hearing committee, we consider this factual finding in aggravation. *Bar Counsel* v. *Doe*, 15 Mass. Att'y Discipline Rep. 799, 811 (1999), citing *Matter of Eisenhauer*, 426 Mass. 448, 454, cert. denied, 524 U.S. 919 (1998); *Matter of Mannion*, 12 Mass. Att'y Discipline Rep. 265, 267 (1996) (repeated untruthfulness to bar counsel during investigation considered in aggravation).

[7] This finding also applied to McBride.

dent grew out of the same matter, the two cases were consolidated before the board. In August and October, 2001, a hearing committee of the board conducted hearings concerning the charges against the respondent, and on December 11, 2003, it issued a report on the consolidated cases. The hearing committee found that the respondent violated S.J.C. Rule 3:07, Canon 2, DR 2-106 (C), as appearing in 382 Mass. 772 (1981),[8] by entering into a contingent fee agreement that capped the brokers' obligation for out-of-pocket expenses. The committee also found that the respondent violated Mass. R. Prof. C. 8.4 (c) and (h), 426 Mass. 1429 (1998),[9] by misleading, after January 1, 1998, von Wood and bar counsel as to the total amount of funds received.[10] The committee did not find a violation of these sections of the rule as to the other brokers.

Bar counsel also charged that the respondent violated S.J.C. Rule 3:07, Canon 7, DR 7-101 (A) (1) and (2), as appearing in 382 Mass. 784 (1981),[11] when he permitted a settlement of the employer's payment obligation without the brokers' prior authorization. The committee concluded that the behavior did not violate those rules. Rather, it concluded that the behavior was a failure to consult with the brokers, especially because "the payment agreement appears to have been the only means

---

[8]Supreme Judicial Court Rule 3:07, Canon 2, DR 2-106 (C), as appearing in 382 Mass. 772 (1981), states: "A lawyer shall not enter into an agreement for, charge or collect a contingent fee, except as permitted by S.J.C. Rule 3:05."

The Massachusetts Rules of Professional Conduct became effective on January 1, 1998, replacing the Canons of Ethics and Disciplinary Rules. S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998).

[9]It is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation," Mass. R. Prof. C. 8.4 (c), as appearing in 426 Mass. 1429 (1998), or to engage in conduct that adversely reflects on his or her fitness to practice law, Mass. R. Prof. C. 8.4 (h), 426 Mass. 1429 (1998).

[10]To the extent that this is a finding that the respondent violated rule 8.4 (c) and (h), because of his letter to bar counsel, it is error. See note 6, *supra*.

[11]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-101 (A) (1), as appearing in 382 Mass. 784 (1981), states, in relevant part, that a lawyer shall not intentionally "[f]ail to seek the lawful objectives of his client . . . ." Supreme Judicial Court Rule 3:07, Canon 7, DR 7-101 (A) (2), as appearing in 382 Mass. 784 (1981), states, in relevant part, that a lawyer shall not "[f]ail to carry out a contract of employment entered into with a client for professional services . . . ."

In the Matter of the Discipline of an Attorney.

of obtaining some payment by [the employer] and thus in the [brokers'] interests." The hearing committee also stated that even if the respondent's behavior violated the charged rules, it would not affect their disciplinary recommendation.

Bar counsel also charged that the respondent's failure to object and call on McBride to restore the brokers' funds to a client fund account and failure to make sure that the funds were not commingled violated S.J.C. Rule 3:07, Canon 9, DR 9-102 (A), as appearing in 419 Mass. 1303 (1995), and S.J.C. Rule 3:07, Canon 9, DR 9-102 (C), as amended, 419 Mass. 1306 (1995).[12] The hearing committee stated that bar counsel did not prove that the respondent knew the accounts in which the money was held or had any authority to take any steps concerning how McBride handled client money. The committee also reiterated that the respondent "remonstrated with" McBride over the distribution of the full amount.

Bar counsel also charged that by (1) failing to notify the brokers that their funds had been commingled, (2) failing promptly to notify the brokers of the receipt in December, 1997, of funds on their behalf, (3) concealing and misrepresenting to the brokers the total amount of funds received on their behalf, (4) failing properly to account for the funds, and (5) allowing or assisting McBride in converting funds to his own use and causing a deprivation to the brokers, the respondent violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981)[13]; Canon 7, DR 7-101 (A) (1) and (2); Canon 9, DR 9-102 (A) and (B), as appearing in 419 Mass.

---

[12]Supreme Judicial Court Rule 3:07, Canon 9, DR 9-102 (A), as appearing in 419 Mass. 1303 (1995), states, in relevant part, that client funds shall be held in client fund accounts. Supreme Judicial Court Rule 3:07, Canon 9, DR 9-102 (C), as amended, 419 Mass. 1306 (1995), states, in relevant part, that client funds shall be held in an IOLTA account or individual account with interest payable to the client.

[13]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), as appearing in 382 Mass. 769 (1981), states, in relevant part, that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing in 382 Mass. 769 (1981), states, in relevant part, that a lawyer shall not "[e]ngage in any other conduct that adversely reflects on his fitness to practice law."

1303 (1995),[14] and 9-102 (C). The hearing committee found that the respondent did not violate these rules because McBride did not convert client funds and therefore the respondent did not assist in such conduct,[15] and that the respondent did not necessarily know that the funds were commingled, had no authority over the funds and, as an associate and inexperienced attorney, should not be held accountable for McBride's handling of funds.

The hearing committee recommended that the respondent receive an admonition. It stated that, with the exception of the letter of December 31, the primary purpose of which was to advise the brokers not to talk to others about the payment agreement, the respondent's primary misconduct was concealing and misrepresenting, in letters to the brokers and bar counsel, the second payment of $50,000. The board concluded that its findings that the respondent had no reason to believe that von Wood would not learn of the second payment and that the purpose of the concealment was to stave off a confrontation with von Wood over whether McBride would take his fees up front supported its conclusion that this was not a case where the respondent "sought to conceal a theft of money." Moreover, the committee noted that the concealment from bar counsel of the second payment was collateral to bar counsel's investigation of von Wood's complaint about the agreement concerning expenses. The hearing committee also considered several factors in mitigation: as a new attorney, the respondent was unfamiliar with contingency fee agreements and record-keeping and financial rules for attorneys; he also had no authority or control over funds in the law firm and was in "an untenable and vulnerable position" as a new associate in a firm with an employer who had much more experience.

Bar counsel appealed to the board, arguing that several of the hearing committee's findings of fact were inconsistent and

[14]Supreme Judicial Court Rule 3:07, Canon 9, DR 9-102 (B), as appearing in 419 Mass. 1303 (1995), states that an attorney shall promptly notify a client of receipt of client's funds, safeguard client's property, maintain complete records of client funds, and promptly pay funds to client when due.

[15]On appeal, the board reversed the finding that McBride did not convert the funds. However, the board rejected bar counsel's argument that the reversal had import for the respondent because McBride's conduct could not be imputed to him.

therefore needed amending.[16] Bar counsel also argued, inter alia, that the hearing committee erred in not finding that the failure to obtain the brokers' consent for the settlement agreement violated DR 7-101 (A) (1) and (2), and that the misrepresentations to von Wood violated DR 7-101 (A) (1) and (2) and DR 9-102 (A) and (B). See notes 1 and 15, *supra*. Bar counsel contended that, if the board amended the findings, the respondent should receive either an indefinite suspension or, alternatively, a two-year suspension.

The board issued its written report in May, 2005, denying the appeal. The board rejected bar counsel's suggestion that the hearing committee's findings needed to be amended. Although the board concluded that the respondent committed no violation when he did not consult the brokers before the payment agreement was signed, it did so for a reason different from that of the hearing committee. Because the hearing committee found that it was McBride and not the respondent who negotiated and executed the agreement, the board concluded that the respondent's merely informing the brokers of McBride's actions was "not sufficient to convert him from bystander to culprit." Finally, the board stated that although the hearing committee found that the two letters of December, 1997, were misleading as to von Wood, the respondent was not truly trying to conceal the existence of the second payment from the brokers "as a whole" because he told so many of them about it. The board adopted the hearing committee's recommendation that the respondent be disciplined by admonition for essentially the same reasons that the committee outlined, adding that its ultimate recommendation was influenced by the fact that it was through the respondent's "singular efforts" that the second $50,000 was obtained for the brokers, and that although the respondent should not have written the letters it was likely McBride would have done so if he had not.

3. "We are empowered . . . to review the board's findings and reach our own conclusion." *Matter of Fordham*, 423 Mass. 481, 487 (1996), cert. denied, 519 U.S. 1149 (1997), citing *Matter of Anderson*, 416 Mass. 521, 525 (1993). However, we

---

[16]The respondent asked the board to adopt the hearing committee's recommendation.

generally afford substantial deference to sanctions recommended by the board. *Matter of Griffith*, 440 Mass. 500, 507 (2003), citing *Matter of Foley*, 439 Mass. 324, 333 (2003). Each case must be decided "on its own merits and every offending attorney must receive the disposition most appropriate in the circumstances." *Matter of Griffith, supra*, quoting *Matter of the Discipline of an Attorney*, 392 Mass. 827, 837 (1984). "If comparable cases exist in Massachusetts, we apply the markedly disparate standard in imposing a sanction." *Matter of Griffith, supra*, citing *Matter of Finn*, 433 Mass. 418, 423 (2001). "We also consider mitigating factors." *Matter of Griffith, supra*, citing *Matter of Finn, supra* at 424. The level of discipline is that which is necessary to deter other attorneys and to protect the public. *Matter of Foley, supra* at 333, quoting *Matter of Concemi*, 422 Mass. 326, 329 (1996).

On appeal, bar counsel argues that the respondent's conduct in intentionally concealing the second payment from von Wood in two letters written in December, 1997, was dishonest, bears on his fitness to practice law in violation DR 1-102 (A) (4) and (6), respectively, and constituted a failure promptly to notify a client of the receipt of funds in violation of DR 9-102 (B) (1). Bar counsel also argues that the appropriate sanction is suspension from the practice of law for one year and one day.

We do not agree with bar counsel that the board should have found that the respondent deliberately failed promptly to notify von Wood of the receipt of the second $50,000 in violation of DR 9-102 (B) (1). The hearing committee found that the respondent had reason to believe that some if not all of the brokers knew about the payment because the respondent had called several brokers within a short period of time after receiving it and understood that the brokers contacted each other freely. We also do not agree that the respondent violated DR 1-102 (A) (4) and (6) when he wrote the letter of December 31, which the hearing committee did find "misleading." The hearing committee expressly found that this letter was not part of the respondent's misconduct because, although it was misleading, in that it inaccurately reported the total amount of money that had been received, its purpose was "primarily to advise the brokers not to talk with those with other claims against [the employer] about the

efforts to obtain payment." See *Matter of Saab*, 406 Mass. 315, 328 (1989), citing S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980) (hearing committee is sole judge of credibility of witnesses).

We do agree, however, that the respondent's misleading statements concerning the second payment in the letter of December 19 were at least "misrepresentations" and, therefore, a violation of DR 1-102 (A) (4) and (6).[17]

Thus we conclude that the respondent violated DR 2-106 (C) (entering into a contingent fee agreement that capped the clients' obligation for out-of-pocket expenses). As to von Wood, the respondent violated Mass. R. Prof. C. 8.4 (c) and (h) (misrepresentation and conduct reflecting on his fitness to practice law after January 1, 1998) and DR 1-102 (A) (4) and (6) (misrepresentation and conduct reflecting on fitness to practice law).

The remaining question is whether the admonition recommended by the board is the appropriate discipline. Bar counsel argues that suspension for one year and one day is appropriate because suspension has been imposed in other cases where a lawyer knowingly deceived and caused injury or potential injury to a client. Bar counsel also argues that, in determining the appropriate sanction, the board gave too much weight to mitigating factors and not enough weight, in aggravation, to the misleading letter to bar counsel. The respondent argues that an admonition recommended by the board is appropriate.

We reject bar counsel's argument that the respondent's conduct warrants suspension. Bar counsel's claim is based on the premise that the respondent aided McBride in an intentional misappropriation of funds, something that the hearing committee and the board rejected, albeit for different reasons. The cases on which bar counsel relies are instances of serious misconduct followed by attempts at a cover-up.[18] Moreover, as

---

[17]Relying on *Matter of Moore*, 442 Mass. 285, 292 n.10 (2004), and *Matter of Kerlinsky*, 428 Mass. 656, 663, cert. denied, 526 U.S. 1160 (1999), the respondent argues that because the hearing committee found that his motive was not to deceive but to avoid a confrontation with von Wood, he lacks an intent to mislead that, he argues, is required by DR 1-102 (A) (4). We need not address whether the cases he cites state that intent is required for a violation of DR 1-102 (A) (4), because the respondent intentionally wrote the misleading letter.

[18]Bar counsel relies on *Matter of Neri*, 17 Mass. Att'y Discipline Rep. 447,

the board noted, distinctions have been made between an "affirmative misrepresentation" and the failure fully to disclose. *Matter of Palmer*, 413 Mass. 33, 38-39 (1992). See *Matter of Wainwright, ante* 378, 387-388 (2007) (although attorneys failed, inter alia, to fulfil affirmative obligation to disclose, there was no evidence that they actively sought to deceive one client to anyone else's advantage); *Matter of Shaw*, 427 Mass. 764, 769 (1998), citing *Matter of Budnitz*, 425 Mass. 1018, 1019 (1997) (attorney lying under oath "qualitatively different" from attorney who makes false statements or presents false evidence). The board found that the respondent's conduct was a failure fully to disclose. Thus suspension in this case would be a markedly disparate punishment. *Matter of Wainwright, supra* at 387, quoting *Matter of Finn, supra* at 423.

The board stated that, but for mitigating factors, a public reprimand of the respondent would have been appropriate for his conduct in not fully disclosing the second payment of $50,000 to von Wood. See, e.g., *Matter of Okai*, 11 Mass. Att'y Discipline Rep. 187, 188 (1995) (where attorney took flat fee to pursue matter, neglected it, and misrepresented to client that he had filed suit, "[s]tanding alone, such conduct would warrant public reprimand"), citing *Matter of O'Malley*, 9 Mass. Att'y Discipline Rep. 252 (1993) (public censure where attorney neglected client's medical malpractice claim, made misrepresentations to client to cover it up, failed to account to client for advance of money, and failed to execute contingent fee agreement); *Matter of Keefe*, 7 Mass. Att'y Discipline Rep. 138, 139-140 (1991) (public censure for neglect of medical malpractice claim where statute of limitations expired and for misrepresentations to deceased client's wife and to bar counsel

448-449 (2001) (suspension of one year and one day where attorney sent letter to potential investor falsely stating that investment was risk-free; after client lost money, attorney falsely stated to bar counsel that she never sent such letter); *Matter of Connolly*, 11 Mass. Att'y Discipline Rep. 43, 44-45 (1995) (three-month suspension where attorney aided client in deception of client's employer whereby client received more funds for relocation than he was entitled to); *Matter of Wagner*, 8 Mass. Att'y Discipline Rep. 251, 252-254 (1992) (five-month suspension where attorney lied to two clients about status of cases he had been neglecting that resulted in loss to clients).

to cover it up); *Matter of Mahlowitz*, 1 Mass. Att'y Discipline Rep. 189, 192, 198 (1979) (public censure where lawyer permitted probate judge to act under misapprehensions in aiding client's sale of property).

We also reject bar counsel's claims that, in determining the appropriate sanction, the board did not give enough weight, in aggravation, to the respondent's misleading letter to bar counsel, and gave too much weight to mitigating factors. The board did not consider the misleading letter to bar counsel just in aggravation; it was an integral part of its discussion of the respondent's misdeeds. Indeed, the board's conclusion that, absent mitigating factors, a public reprimand was appropriate discipline followed a discussion of cases where attorneys lied to bar counsel. In addition, we find it significant that the hearing committee found that the omission of mention of the second payment of $50,000 went to a matter collateral to bar counsel's investigation. Cf. *Bar Counsel* v. *Fitzgerald*, 16 Mass. Att'y Discipline Rep. 164, 174 (2000) (public reprimand where attorney was charged with lying to bar counsel during investigation, with no compelling mitigating circumstances); *Matter of Dolan*, 10 Mass. Att'y Discipline Rep. 59, 63 (1994) (public censure where attorney, motivated solely by dealing with difficult client, lied to court and opposing counsel and thus conduct was highly destructive of judicial system).[19]

Although bar counsel does not argue that the hearing committee's findings of fact concerning mitigating factors are not supported by substantial evidence, his claim regarding the board's consideration of such factors is based on our recasting

---

[19]As the board pointed out, the other cases on which bar counsel relied in making his argument about misrepresentations to bar counsel concerned "other egregious misconduct in addition to misrepresentation." See *Matter of Brown*, 12 Mass. Att'y Discipline Rep. 23, 23, 26 (1996) (attorney suspended for falsification of evidence and failure to cooperate with bar counsel); *Matter of Wagner*, *supra* at 253 (attorney suspended after "serious neglect of client matters, a pattern of falsehoods, a substantial loss by one client, and a belated acknowledgement of full responsibility" and nothing in mitigation). See also *Matter of Mannion*, 12 Mass. Att'y Discipline Rep. 265, 266-268 (1996) (public reprimand where attorney accepted prohibited referral from court personnel and made prohibited in-person solicitation for fee; repeated lies to bar counsel during investigation, lies in testimony before hearing committee, and prior private reprimand considered in aggravation).

some of the factual findings of the hearing committee, including the respondent's motive in writing the misleading letters and the nature of the employment relationship between the respondent and McBride,[20] which we decline to do. The board properly considered the respondent's inexperience; the fact that his motive in writing the letters was not to cover up a theft, but rather to avoid a confrontation with only one of his seventeen broker-clients; his efforts to secure the second payment of $50,000 before the employer sought bankruptcy protection; and his efforts to convince McBride to abide by the November 5 agreement concerning distribution of funds. See *Matter of Wainwright, ante* 378, 387-388 (2007) (fact that attorneys did not actively intend to deceive client to their own advantage considered in mitigation). Compare *Matter of Nickerson*, 422 Mass. 333, 336-337 (1996) (considering experienced attorney's lack of authority to shape policy at law firm in mitigation), and *Matter of Pike*, 408 Mass. 740, 744 n.4 (1990) (attorney's inexperience may be considered as factor when imposing discipline), with *Matter of Bryan*, 411 Mass. 288, 291 (1991) (inexperience does not mitigate intentional misappropriation of client funds). Compare *Matter of Dolan, supra* (public censure where attorney, motivated solely by dealing with difficult client, lied to court and opposing counsel, and thus conduct was highly destructive of judicial system), with *Matter of Sheridan*, 18 Mass. Att'y Discipline Rep. 461, 465, 489, 504 (2002) (attorney suspended for one year for failing to inform board that he had been suspended from practice in New Hampshire because he neglected multiple bankruptcy cases; Bankruptcy Court judge rejected difficult client defense because difficult clients do not prevent lawyer from properly following rules of court). But see *Matter of an Attorney*, 14 Mass. Att'y Discipline Rep. 804 (1998) (private admonition where attorney revealed client

---

[20]Bar counsel argues that because of the contingent fee agreement, the brokers were the respondent's clients and not McBride's, and that the board therefore erred in weighing the respondent's employment status in mitigation. See *Matter of Nickerson*, 422 Mass. 333, 336-337 (1996) (considering experienced attorney's lack of authority to shape policy at law firm in mitigation). The parties' stipulation stated that "McBride agreed that McBride & Associates would assume representation of the brokers," and the hearing committee found that McBride "actually exercised direction, authority and control over the conduct of the case."

confidences in affidavit withdrawing from case, although board rejected difficult client defense).

In sum, the respondent was a new attorney in his first legal position, dealing with a more experienced employer. In writing the misleading letters, he was motivated not by a desire to hide money from the brokers, but by a desire to avoid a confrontation with von Wood. It was through his effort that the brokers received the second $50,000. Taking into consideration the totality of the circumstances, *Matter of Saab*, 406 Mass. 315, 328 (1989), quoting *Matter of McInerney*, 389 Mass. 528, 531 (1983), we conclude that the public interest is best served by adopting the board's recommendation of an admonition. *Matter of Wainwright*, *supra* at 388, and cases cited (purpose of discipline is to protect public). The respondent's conduct was wrongful, but it does not warrant discipline more severe than that recommended by the board. See *Matter of the Discipline of an Attorney*, 3 Mass. Att'y Discipline Rep. 115 (1983) (private reprimand where attorney failed to disclose to court that proceedings in matter had been instituted in another State, given mitigating factors), citing *Private Reprimand No. PR-81-10*, 2 Mass. Att'y Discipline Rep. 238 (1981); *Private Reprimand No. PR-81-9*, 2 Mass. Att'y Discipline Rep. 236 (1981); *Private Reprimand No. PR-81-2*, 2 Mass. Att'y Discipline Rep. 225 (1981). See also *Matter of Griffith*, 440 Mass. 500, 507 (2003), citing *Matter of Foley*, 439 Mass. 324, 333 (2003) (sanctions recommended by board generally afforded substantial deference).

Under S.J.C. Rule 4:01, § 4, as appearing in 425 Mass. 1304 (1997), reprimands are issued by bar counsel. Accordingly, on remand to the county court, this matter will be referred to bar counsel with instructions that the respondent be admonished for his conduct.

*So ordered.*