# United States Court of Appeals
## For the First Circuit

No. 23-8019

In RE: JAMES HAYES,

Respondent.

ON ORDER TO SHOW CAUSE WHY RECIPROCAL DISCIPLINE
SHOULD NOT BE IMPOSED

Before

Barron, <u>Chief Judge</u>,
Thompson and Gelpí, <u>Circuit Judges</u>.

Edward R. Wiest for respondent.

August 13, 2024

**Per Curiam.** On June 30, 2020, Massachusetts Bar Counsel filed a four-count petition for discipline with the Massachusetts Board of Bar Overseers (the "Board") against attorney James Hayes. The petition accused Hayes of "fraud," "violation of court orders," "mishandling and misusing client funds," and "additional dishonest conduct," in connection with his representation of a former client who, to avoid paying child support, had concealed funds that he obtained by purchasing a winning lottery ticket.

The petition was referred to a hearing committee of the Board. The hearing committee found that each count had merit and recommended that Hayes be disbarred from the practice of law before Massachusetts state courts. Hayes appealed that ruling to the Board, which affirmed the hearing committee's conclusions. A single justice of the Massachusetts Supreme Judicial Court ("SJC") issued a decision agreeing with the Board and disbarring Hayes. Hayes thereafter appealed the single justice's decision. The SJC affirmed. In re Hayes, 220 N.E.3d 573, 582 (Mass. 2023).[1]

Upon receiving the judgment of disbarment from the SJC, this Court ordered Hayes to show cause why we should not order his disbarment in our Court as reciprocal discipline. Hayes responded and requested a hearing, which we granted. Hayes appeared through counsel. Cf. In re Williams, 398 F.3d 116, 119 (1st Cir. 2005)

[1] Hayes then filed a motion for reconsideration, which was denied. In turn, the matter at the state level was closed.

(per curiam) ("In addition to considering the state court record, this court will ordinarily afford the respondent attorney a hearing, if requested."); see also Fed. R. App. P. 46(b)(3) ("The court must enter an appropriate order after the member responds and a hearing is held, if requested.").

Hayes contends that less serious discipline than the SJC imposed in state court is warranted in our Court. He contends that, at most, a term suspension is warranted.

In assessing Hayes's position, we must "undertake an 'intrinsic consideration of the state record,'" although the "state court's substantive findings ordinarily are entitled to a high degree of respect." In re Williams, 398 F.3d at 118-19 (quoting Selling v. Radford, 243 U.S. 46, 51 (1917)). "[T]he ultimate decision of the state court as to the type and kind of discipline meted out is 'not conclusively binding' on this court." Id. at 118 (quoting In re Ruffalo, 390 U.S. 544, 547 (1968)). But, "[a]s a general rule, discipline similar to that imposed in the state court will be imposed in a reciprocal proceeding." In re Oliveras López de Victoria, 561 F.3d 1, 3 (1st Cir. 2009) (per curiam) (quoting In re Williams, 398 F.3d at 119). That is not the case, however, if we are persuaded:

> 1. that the procedure used by the other court
> was so lacking in notice or opportunity to be
> heard as to constitute a deprivation of due
> process; or

- 3 -

2. that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or

3. that the imposition of substantially similar discipline by this Court would result in grave injustice; or

4. that the misconduct established is deemed by the Court to warrant different discipline.

In re Williams, 398 F.3d at 119 (quoting 1st Cir. R. Att'y Disciplinary Enf't ("Disciplinary R.") II.C).  Hayes bears the burden of proof to show, by clear and convincing evidence, that one of these "conditions which would warrant our imposing no discipline or different discipline" is present here.  In re Oliveras López de Victoria, 561 F.3d at 4.

Hayes first argues that our Court should impose, at most, a term suspension because "the SJC's decision was so tainted by errors of law and fact coloring its assessment of the credibility of the principal witness against Mr. Hayes that 'this Court [cannot], consistent with its duty, accept as final the conclusion [of the SJC] on' Mr. Hayes' disbarment," (alterations in original) (quoting Disciplinary R. II.C(2)).[2]  The "principal witness" is

_____

[2] Hayes first filed a pro se response to the order to show cause, but then supplemented his response with a memorandum filed through counsel. We look primarily to Hayes's counseled memorandum as the source of Hayes's arguments in this matter, though, favorably to Hayes, we also consider the separate arguments regarding procedural irregularities contained only in his pro se filing.

- 4 -

Hayes's former client, who testified to the hearing committee that Hayes "was the creator of a scheme by which [the former client] sought to 'fraudulently' evade the application of $455,000 of lottery winnings to pre-existing child support obligations by transferring 50% of the payment to [the former client's] half-brother."

Hayes asserts that the SJC erred by accepting the hearing committee's decision to credit the former client's testimony. Hayes contends that is so because the testimony is inconsistent with other "testimony and substantial documentary evidence which contradicted [the former client's] implied chronology of events and disproved Mr. Hayes's role as a facilitator of . . . efforts to hide assets in pending child support cases." In other statements, Hayes contends, the former client stated that he and his half-brother jointly owned the winning lottery ticket and suggested that the transfer of funds from the former client to his half-brother was initiated prior to Hayes's involvement in the matter.

The relevant Board rules make the hearing committee the "sole judge of the credibility of the testimony presented at the hearing," S.J.C. Rule 4:01 § 8(5)(a); accord In re Saab, 547 N.E.2d 919, 927 (Mass. 1989). Thus, the SJC will not reject a credibility determination by the hearing committee "unless it can be said with certainty that the finding was wholly inconsistent with another

- 5 -

implicit finding." In re Haese, 9 N.E.3d 326, 332 (Mass. 2014) (cleaned up). We see no basis for departing from the SJC's determination that the hearing committee did not err in crediting the former client's testimony as it did.

The record reveals that the hearing committee reasonably could have credited the former client's testimony that Hayes was the architect of a fraudulent scheme to transfer funds to the former client's half-brother without also crediting the former client's unsworn statement in his initial complaint against Hayes to the Bar Counsel that the former client and his half-brother won the lottery together. Hayes also fails to point to any evidence that gives rise to "the clear conviction that this Court could not . . . accept as final the conclusion" that Hayes devised the scheme to hide the winnings with the former client's half-brother. In re Oliveras López de Victoria, 561 F.3d at 3 (quoting Disciplinary R. II.C(2)).

Moreover, insofar as Hayes means to argue that the hearing committee erred simply because it credited only some parts of the former client's testimony, he is wrong to do so. As the SJC noted, "the hearing committee was not required to take an all-or-nothing approach in assessing witness credibility." In re Hayes, 220 N.E.3d at 578.

Shifting gears, Hayes contends that the SJC legally erred by characterizing his conduct as "fraudulent," because

Massachusetts law does "not permit the conduct of an attorney to be characterized as 'fraud' on the basis of a <u>client's</u> efforts to achieve fraudulent goals" (emphasis added). But the SJC did not impute to Hayes his former client's fraudulent intent. Instead, the SJC, based on the hearing committee's findings, concluded that Hayes himself "pursu[ed] a series of activities that [he] knew to be fraudulent . . . includ[ing] setting up trust accounts for the sole purpose of secreting the lottery funds[,] . . . periodically disbursing portions of those funds to himself[,] . . . making intentional misrepresentations about the [former] client's assets in court proceedings," and filing frivolous petitions "in furtherance of" the scheme "to conceal the lottery winnings." <u>In re Hayes</u>, 220 N.E.3d at 578-79.

Hayes is also incorrect that his filing of the "petitions" -- namely a bankruptcy petition and a petition for single-justice relief that he filed on behalf of the former client -- could not support a finding of his fraudulent intent. The hearing committee determined that Hayes filed each of the petitions in furtherance of his own "improper purpose of evading the [former] client's child support obligations and preventing the [former] client's ex-girlfriend and a court-appointed receiver from discovering and obtaining the [former] client's assets," and Hayes himself admitted that the petitions were filed without any "adequate legal basis." <u>Id.</u> at 579.

Hayes does also argue that, even accepting the SJC's factual and legal conclusions, less serious discipline than disbarment is warranted in our Court because "[a]ll that is 'warranted' . . . [by the misconduct he was found to have engaged in] is, at most, the term suspension consistent with discipline ordinarily applied in Massachusetts courts i[n] similar cases" (quoting Disciplinary R. II.C(4)). Specifically, Hayes contends that the SJC failed to quantify "what portion of the fees he collected were in fact earned," acknowledged that Hayes had done a "modicum of legal work," and failed to find any harm to his former client "beyond excessive fees." Furthermore, Hayes points to mitigating factors such as his years of good standing in the Massachusetts bar. Finally, he contends that the SJC typically imposes only term suspensions for conduct such as his. We are not persuaded.

We see no basis for questioning the SJC's decision to credit the hearing committee's findings that the underlying fraudulent scheme was cooked up by Hayes himself. Ample evidence in the record also supports the hearing committee's findings as to fees, including the findings that he charged "clearly excessive fees, . . . fees to which [he] was not entitled, as well as double bill[ed] for the same legal work," In re Hayes, 220 N.E.3d at 580. Those findings in turn lend support to the SJC's conclusions that there are "multiple factors to be weighed in aggravation" and that

"the cumulative effect of [Hayes's] fraudulent scheme warrants" disbarment.  Id. at 581-82.

We also do not agree with Hayes that his case is analogous to the cases that he highlights in which the SJC imposed only term suspensions or public censures.  None of those cases involved equivalent misconduct as none involved a finding that the attorney facing the discipline had been the creator of a scheme by which his client could defraud others, let alone with the consequence of enabling the client to avoid paying child support.  See In re Zankowski, 164 N.E.3d 898 (Mass. 2021); In re Diviacchi, 62 N.E.3d 38 (Mass. 2016); In re Fordham, 668 N.E.2d 816 (Mass. 1996).

Finally, Hayes suggests, primarily in his pro se filings, that certain procedures adopted by the hearing committee "violated standards of fairness and due process by denying [him] the ability to present evidence that [his former client's] testimony was not credible."  Most concretely, Hayes alleges that during his counsel's cross-examination of the former client, the former client made the implausible statement that Hayes himself had drafted the bar complaint his former client had filed against him but that the hearing committee then allowed the Bar Counsel to have a breakout session with the former client.  Hayes goes on to contend that, by doing so, the Bar Counsel caused the former client, on redirect-examination, to "change[] all of his original

answers on cross concerning authorship of the 2014 bar complaint." Thus, according to Hayes, the breakout session "eliminated" Hayes's "ability to present meaningful evidence" because it caused the hearing committee to find the witness credible and Hayes not credible, which in turn made Hayes's evidence "dead on arrival."[3]

This argument also fails. "It suffices to satisfy due process if a state adopts procedures that collectively ensure the fundamental fairness of the disciplinary proceedings." In re Barach, 540 F.3d 82, 85 (1st Cir. 2008); see also In re Williams, 398 F.3d at 120 ("In this context . . . due process concerns are limited to 'want of notice or opportunity to be heard.'" (quoting Selling, 243 U.S. at 51)). Hayes has shown no more than that the former client gave certain testimony prior to the break and other testimony after it. He has not shown that the Bar Counsel -- rather than the witness himself -- "caused" the testimony to be different after the break. Thus, we do not see how we could conclude based on the break-out itself that the process followed by the hearing

_____

[3] Hayes briefly argues, in a footnote of his counseled memorandum, that a comment made by a hearing committee member suggests that "[o]n at least one occasion during the hearing, the panel may have inverted th[e] burden of proof" from the Bar Counsel onto Hayes. Hayes makes no developed argument, however, as to how this comment shows the committee followed a procedure that was "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." Disciplinary R. II.C(1); cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

committee was "so lacking in" either one "as to constitute a deprivation of due process." Disciplinary R. II.C(1). And Hayes identifies no other asserted procedural defects that would permit such a conclusion.

For these reasons, we conclude that Hayes has not shown cause to impose a punishment different from the one that the SJC imposed. Attorney James Hayes is hereby disbarred from the practice of law before this Court. The Clerk of Court shall forward to the SJC a copy of this opinion.

**So Ordered.**