**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 23-8029

IN RE: PAUL S. HUGHES,

Respondent.

ON ORDER TO SHOW CAUSE WHY RECIPROCAL
DISCIPLINE SHOULD NOT BE IMPOSED

Before

Aframe, Lipez, and Howard,
<u>Circuit Judges</u>.

<u>Paul S. Hughes</u>, pro se, respondent.

November 18, 2025

**PER CURIAM**.  Paul Hughes was disbarred from practicing law in Massachusetts state court because he misused client funds. This Court ordered Hughes to show cause why it should not impose the same sanction.  Hughes responded that this Court should order a lesser penalty on the ground that the Massachusetts proceedings were infected by bar counsel's knowing use of false testimony to make his conduct seem more egregious than it was.  We reject Hughes' argument and impose the same disbarment punishment.

In May 2023, a single justice of the Massachusetts Supreme Judicial Court ("SJC") adopted the recommendation of the Board of Bar Overseers ("Board") that Hughes be disbarred.  Hughes decided not to appeal the single justice's decision to the full SJC.  We summarize the salient facts from the Board's findings.

Hughes focused his law practice on representing homeowners in negotiations with insurance companies after suffering major property damage.  The allegations leading to Hughes' disbarment involved his misuse of client funds belonging to two couples that he represented in separate negotiations after home fires.

For the first couple, Hughes withdrew from his IOLTA account approximately $139,000 in insurance settlement proceeds beyond the amount he was entitled to pay himself as a fee.  When the couple sought to pay off the mortgage on their damaged home to buy a new house, there were insufficient settlement funds in the

- 1 -

IOLTA account. Hughes obtained a loan from family members to reimburse the couple. But the delay in providing the couple with access to their settlement proceeds caused them to lose out on certain real estate purchase opportunities and to pay an extra $8,000 in mortgage interest.

The Board found that when Hughes withdrew the couple's funds from his IOLTA account, he had not yet informed them that there had been a settlement with the insurance company. This conclusion was based on the couple's testimony to that effect and that they had never endorsed a check from the insurance company. Hughes contends that the couple's testimony was fraudulent because he presented a check showing their endorsements. Hughes further asserts that their additional testimony about intending to buy a new house was also false. He argues that they intended to rebuild their original home and decided to buy a new house only after he had returned their misused funds. Thus, according to Hughes, the couple was not harmed by the belated return of the settlement funds.

As to the second couple, the insurance company sent a settlement check to Hughes' IOLTA account for $376,000. Hughes misspent $35,750 of those funds. After bar counsel had opened its investigation into Hughes, Hughes gave the couple a check for $22,219. Hughes justified the difference between the amount misspent and the final amount he paid the couple by pointing to

additional fees he claimed to have earned for (1) representing the couple in a lawsuit against the insurance company, and (2) assisting the couple in selling their damaged home and buying a new house.

To support his arguments, Hughes presented evidence that the couple had agreed to the additional fees. His proof consisted of evidence that he had sent the couple a full accounting of his fees, that the couple had accepted the final check for $22,219, and that the couple had authored a letter to bar counsel stating that Hughes' summary of charges was accurate. The couple testified, however, that they did not understand that Hughes was paying them less than the amount he misspent, that they had not seen a summary of charges, and that Hughes had provided them with the language that appeared in their letter to bar counsel. The Board rejected Hughes' arguments, concluding that (1) the couple had not agreed for Hughes to work on real estate transactions, and (2) the lawsuit against the insurance company was part of Hughes' original agreement to represent the couple, which was limited to a five percent contingency from the insurance settlement.

Hughes did not dispute in the Massachusetts proceedings and does not dispute here that he misused client funds. He argues, however, that the SJC imposed an overly harsh sanction because the single justice found his conduct to be more egregious than it was. He points to the single justice's conclusions that his conduct

"caused harm" to the first couple by frustrating their efforts to buy a new house and that he "failed to make full restitution to the second couple" because he still owed them the difference between the $35,750 balance and the $22,291 payout. He contends that these adverse conclusions followed from bar counsel knowingly presenting false testimony from the couples.

The general rule in this Court is that "discipline similar to that imposed in the state court will be imposed in a reciprocal proceeding." In re Oliveras López de Victoria, 561 F.3d 1, 3 (1st Cir. 2009). There are, however, exceptions for situations where:

> 1. . . . the procedure used by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> 2. . . . there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> 3. . . . the imposition of substantially similar discipline by this Court would result in grave injustice; or
>
> 4. . . . the misconduct established is deemed by the Court to warrant different discipline.

Id. (quoting In re Williams, 398 F.3d 116, 119 (1st Cir. 2005) (per curiam) (quoting 1st Cir. R. Att'y Discip. Enf. II.C)). In resolving a challenge to the imposition of reciprocal discipline, "the state court's substantive findings ordinarily are entitled to a high degree

of respect," and the burden rests with the challenging party to show "by clear and convincing evidence, that the imposition of substantially similar discipline is unwarranted." Id. (quoting In re Williams, 398 F.3d at 118).

If Hughes had established that bar counsel had suborned perjury by offering the couples' false testimony to make his conduct appear more aggravating that it was, we might have serious questions about the appropriate sanction to impose. But Hughes has not come close to making such a showing or even establishing that there was any infirmity in the proof presented to support his disbarment.

Under Board procedures, the hearing committee is the "sole judge of the credibility of the testimony." In re Hayes, 112 F.4th 61, 65 (1st Cir. 2024) (quoting S.J.C. Rule 4:01, § 8(5)(a) (internal quotation marks omitted)). And the SJC will not reject a finding unless "it can be said with certainty that the finding was wholly inconsistent with another implicit finding." Id. (internal quotation marks omitted).

Hughes raised his suborning perjury contention to the SJC single justice. The single justice rejected Hughes' claim, describing it as a "dispute over witness credibility" for which the Board's conclusions are controlling because they "are supported by the record."

- 5 -

We see no basis for disagreeing with that conclusion. There was testimony from both couples that aligns with the single justice's determination about the harm that Hughes caused them. Hughes testified to different facts and provided some documents that he said supported his position. But there was also evidence about Hughes' lack of candor, which provided a basis for questioning the validity of some of his documentary evidence and his testimony concerning the couples' knowledge and intentions.

Nothing has been presented to suggest that Hughes was denied the opportunity to testify in his own right or restricted in his ability to impeach the couples' testimony. Based on all the evidence presented, the single justice accepted the determination that the couples testified credibly. We have no reason for ignoring that decision or for accepting Hughes' suggestion that bar counsel engaged in any sort of misconduct. See United States v. Zichettello, 208 F.3d 72, 102 (2d Cir. 2000) (stating that "discrepancies in the evidence do not . . . establish that the government offered perjured testimony, knowingly or not").

Hughes also complains that he was denied the ability to contest the fairness of his discipline hearing in a separate proceeding before the SJC. But Hughes' arguments about the application of state procedures for bringing a separate challenge to the fairness of his state disciplinary hearing has no apparent

connection to whether this Court should impose reciprocal discipline based on the SJC's disbarment finding. In any event, the SJC single justice considered and rejected the due-process-based argument about conflicting testimony that Hughes presented in this Court as the basis for seeking a lesser penalty.

Hughes has failed to show cause for this Court to impose a different sanction from the one imposed by the SJC. Attorney Paul Hughes is therefore disbarred from the practice of law before this Court. The Clerk of Court shall forward to the SJC a copy of this opinion.

**So ordered**.